113 N.J. Super. 222 (1971)
273 A.2d 399
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
SHERWIN H. RAYMOND, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 25, 1971.
Decided February 2, 1971.
*223 Before Judges GOLDMANN, LEONARD and MOUNTAIN.
Messrs. Glickman & Valentine, attorneys for appellant.
Mr. Geoffrey Gaulkin, Hudson County Prosecutor, attorney for respondent (Mr. Edwin H. Stern, Chief Assistant Prosecutor, and Mr. Howard Pfeffer, Assistant Prosecutor, on the brief).
*224 The opinion of the court was delivered by GOLDMANN, P.J.A.D.
Defendant and four others were indicted in September 1968 for abortion (N.J.S.A. 2A:87-1) and conspiring to commit abortion (N.J.S.A. 2A:98-1 and 2). After the trial began defendant pleaded guilty to the latter charge, the abortion indictment being dismissed on the State's motion. Defendant received a suspended State Prison sentence of 1-3 years and was fined $1,000. This appeal followed.
Defendant had prior to trial moved to dismiss the indictments on the ground that the delay between his arrest in February 1966 and the grand jury's return of true bills prejudiced his case. This motion was denied. He also moved to suppress the evidence obtained at the time of the arrest, and this too was denied. At the time he pleaded guilty, defendant said that he had no legal defense insofar as guilt was concerned, but mentioned that there might be a technical defense, namely, the constitutionality of the abortion law then being tested in the higher courts. The trial judge then pointedly inquired whether defendant realized that if he were presently to challenge the constitutionality of the statute, the judge would have to sustain its validity. Defendant's answer was that he so understood.
The facts leading up to defendant's arrest were developed at the hearings on the motion to suppress and to dismiss the indictments. Briefly, two Union City detectives received information from a young woman that an abortion had been performed on her in a multi-story motel. Since the only motel of that description known to the detectives was located in North Bergen, they contacted the police there. A detective was dispatched to the North Hudson Hospital where the girl had gone. She told him the same story, recalling that the first two digits of the motel room where she had been aborted were 41; that the abortionist used several rooms, for operating and as a waiting room, and that there were women waiting to be aborted. She said that the arrangements *225 for her abortion had been made with defendant, and gave his address.
Detectives from North Bergen accompanied the girl to another hospital that was equipped to examine her. On their way to that hospital the girl pointed out the motel where she had been aborted. At the hospital a doctor confirmed the fact that an abortion had taken place. On receiving this information the deputy chief of police, with the advice of a local magistrate, decided to raid the motel. The raiding officers went there and were told that a business firm had rented Rooms 412, 407 and 409. As they left the elevator on the fourth floor they were seen by a man who was leaving Room 409 and who at once crossed the corridor and went into Room 412, closing the door behind him. The police knocked on the door of 412 and, receiving no answer, were about to enter when the door was opened. They found three women and three men quietly sitting in the room. It was claimed that they were having a party. A detective then entered Room 409, which was described as very hot and which contained beds that had been slept in. The tinkling of metal could be heard from an adjoining room over the sound of a television set. On entering that room the police saw defendant in the process of performing an abortion. He was allowed to continue in the interest of the woman's safety, but the police photographed what took place.
Defendant waived a preliminary hearing on a complaint charging him with abortion  this in connection with the woman on whom an abortion was being performed in Room 407.
Defendant's first and most crucial point is that he did not waive his right to raise the three constitutional arguments he now presents merely because he pleaded guilty to the conspiracy charge. Those arguments are directed to the unconstitutionality of the abortion statute, an illegal search and seizure, and the denial of a speedy trial. He refers us to United States ex rel. Rogers v. Warden of Attica State Prison, 381 F.2d 209 (2 Cir.1967), and United States ex *226 rel. Molloy v. Follette, 391 F.2d 231 (2 Cir.1968), cert. den. 391 U.S. 917, 88 S.Ct. 1812, 20 L.Ed.2d 658 (1969), where the courts held that the federal remedy of habeas corpus was not foreclosed by a guilty plea. These were cases involving a motion to suppress evidence on the ground of illegal search and seizure, made prior to the plea of guilty. However, New York had a statute (66 McKinney's Consol. L., § 813-c) stating that if a motion to suppress evidence is denied, the order could be reviewed on appeal from the conviction notwithstanding the fact that the judgment was predicated upon a guilty plea. New Jersey has no such statute or rule. This court has held that where a defendant pleads guilty upon the advice of counsel, and no coercion or any impropriety can be shown, the plea will preclude any question of illegality in the seizure of evidence or certain other constitutional guarantees with respect to the criminal prosecution. State v. Humphreys, 89 N.J. Super. 322, 326 (App. Div. 1965), followed in State v. Marshall, 91 N.J. Super. 346, 351-352 (App. Div. 1966).
The consequences of a guilty plea have been examined in a number of recent United States Supreme Court cases. Such a plea is in itself considered a conviction, and several federal constitutional rights are waived when the plea is entered, e.g., the privilege against self-incrimination, the right to trial by jury, the right of confrontation. Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Of course, the plea must be voluntary and made with a full understanding of its consequences. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 1468-1469, 25 L.Ed.2d 747 (1970); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970); State v. Herman, 47 N.J. 73, 76-77 (1966).
Our reading of the transcript of the plea convinces us that defendant voluntarily retracted his plea of not guilty to the conspiracy indictment and pleaded guilty, well understanding the consequences of so doing. At that moment he knew that the trial court had denied his motion to dismiss *227 as well as his motion to suppress, and therefore understood his legal position. By pleading guilty he waived any of the constitutional rights he now claims.
The constitutionality of our abortion statute has, of course, been upheld in State v. Moretti, 52 N.J. 182 (1968), cert. den. 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968). Cf. Gleitman v. Cosgrove, 49 N.J. 22 (1967), and State v. Baird, 50 N.J. 376 (1967) (Judge Goldmann, then temporarily assigned to the Supreme Court, joining in the concurring opinion of Chief Justice Weintraub).
The search and seizure were clearly legal because incident to a lawful arrest. When the local police officers went to the fourth floor of the motel and proceeded to arrest defendant and search the suite, they did so because they had reasonable cause to believe that a high misdemeanor  abortion (N.J.S.A. 2A:87-1)  was in the process of being committed or had been committed. See State v. Doyle, 42 N.J. 334, 345-346 (1964); State v. Carter, 54 N.J. 436, 446-447 (1969). As in Doyle, the police were informed about an illegal abortion and they proceeded directly to the premises occupied by defendant following a medical examination of the young lady at the hospital. The search did not extend beyond the area under the possession and control of defendant and his co-defendants. Cf. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
There was no inordinate delay between arrest and indictment. R. 3:25-3 (formerly R.R. 3:11-3(c)) allows a defendant to move to dismiss the complaint when there is an unnecessary delay between arrest and indictment. Defendant never made such a motion. It was only after he was indicted that he moved to dismiss the case on that ground. At the hearing there was some indication that the delay was at least in part for defendant's benefit, and this would explain his failure to move for a dismissal under the rules. Whatever the reasons for the delay in presenting the case to the grand jury, defendant has failed to show that there was a purposeful and oppressive delay, nor has he persuasively *228 shown just what adverse effect the delay may have had so as to prejudice his cause.
The conviction is affirmed.