STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JACKLYN LEE GIBSON, DEFENDANT-APPELLANT.

Argued March 17, 1975—Decided November 6, 1975.

See also, 68 *N. J.* 532.

500

*Mr. Edward J. Dimon,* Assistant Deputy Public Defender, argued the cause for defendant-appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. Solomon Rosengarten,* Deputy Attorney General, argued the cause for plaintiff-respondent (*Mr. William F. Hyland.* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

CONFORD, P. J. A. D., Temporarily Assigned. The question presented on this appeal from a denial of post-conviction relief is whether, when a defendant, knowingly and with advice of an attorney, enters into a plea agreement with the State pursuant to which (a) he pleads guilty to certain charges in return for sentence concessions on said pleas and the dismissal of a more serious charge; and (b) the latter are conditioned on defendant's waiving appeal from an armed robbery conviction entered against him after trial, the defendant may have post-conviction relief, after expiration of the time to appeal the armed robbery conviction, restoring the right of appeal therefrom. Defendant's contention is that the surrender of his right of appeal was invalid and illegal and gave rise to a right to such post-conviction relief.

Our holding is that while, as a matter of judicial policy, a defendant will be permitted to bring a *timely* appeal from a conviction notwithstanding his agreement by plea bargain not to appeal, he may not bring an appeal out of time, as we find no basis for post-conviction relief in the mere inclusion in a plea agreement, under circumstances free from

coercion or undue pressure upon the defendant, of an agreement not to appeal a conviction.

On October 21, 1971 defendant Gibson and co-defendant Bryant were indicted by the Salem County Grand Jury on charges of robbery and robbery while armed in violation of *N. J. S. A.* 2A:141–1 and 2A:151–5. Gibson was also indicted that day for escape from a police officer, contrary to *N. J. S. A.* 2A:104–6. On January 27, 1972 Gibson was indicted for malicious destruction of county property while incarcerated in the Salem County jail, in violation of *N. J. S. A.* 2A:122–1, and at an unspecified date he was also indicted for sodomy, contrary to *N. J. S. A.* 2A:143–1.

In December 1971 Gibson and Bryant were tried on the robbery and robbery while armed charges and were convicted by jury verdict on both charges. Defendant was sentenced on July 21, 1972 by Judge Narrow to a prison term of 10–12 years on the robbery conviction and to a concurrent term of 2–3 years for the armed feature. That sentencing was preceded by the negotiation of an agreement between defendant, on advice of counsel, and the prosecutor, encompassing the following terms: (a) defendant would plead guilty on the escape and malicious injury to property charges, but his sentences therefor would be concurrent with the sentence on the armed robbery conviction; and (b) the sodomy indictment would be dismissed. In return for the foregoing defendant agreed that he would not appeal from the conviction for armed robbery and for being armed.

Although, unfortunately, the transcript of the proceedings on sentencing reveals that the terms of the plea agreement were not submitted for approval to the trial court, as they should have been, see Administrative Directive, 94 *N. J. L. J.* 1 (1971),[1] the record of the instant post-conviction proceedings strongly supports the inference

---

[1] The procedure for plea discussions and agreements is now set forth in *R.* 3:9–3, adopted July 17, 1975 to be effective September 8, 1975. The rule will be amended to conform with this opinion.

that the court did know of the agreement and in fact approved it. Defendant does not assert the contrary.

In addition to sentencing defendant on the charges for robbery and for being armed, as noted, the court at the same time accepted his guilty pleas on the escape and malicious property damage charges and sentenced him to consecutive prison terms of 2½ to 3 years for each, but both to be concurrent with the armed robbery sentences. At sentencing, the trial court informed defendant that he had the right to appeal any of the sentences within 45 days and that the court would appoint an attorney for him for that purpose should he lack the means therefor. Defendant indicated he understood. No direct appeal was taken from any of the convictions.

At the hearing of the post-conviction petition, defendant's attorney as of the time of the plea arrangements and sentencing testified that he had discussed these matters with defendant and his mother and had informed defendant he had a right to appeal the armed robbery convictions, but that defendant had indicated he did not wish to appeal. He had also represented defendant on the sodomy charges, and had reviewed the merits of that charge with defendant.

On September 16, 1972, defendant wrote to the attorney complaining that notwithstanding "the deal" made on his behalf to drop the sodomy charge, the charge was still outstanding. He requested the attorney to "keep up your end of the bargain and get the charge dropped like you said it would be." The sodomy charge was subsequently dismissed.

On or about June 6, 1973, defendant filed a *pro se* petition for post-conviction relief pursuant to *R.* 3 :22–1 *et seq.* As grounds for relief, he asserted (1) the unconstitutional use by the State of perjured testimony; (2) "the use of pending charges used to enhance the punishment inflicted"; and (3) there was no evidence of armed robbery; the State used hearsay evidence; and the State brought out unrelated

other charges. Defendant sought relief either through a new trial or by a reduction of sentence.

By amendment of the petition through the Office of the Public Defender, defendant asserted a denial of due process of law in that his attorney had informed him on the day of his sentencing that the prosecutor would move for a dismissal of the sodomy charges if no appeal was taken on the conviction for armed robbery and that "relying on that information he failed to exercise his right of appeal."

After hearing, the trial judge denied the petition. The court found that defendant knew of his right to appeal; that there was a plea bargain entered into at arms' length, with representation of defendant by qualified counsel; and that defendant's election not to appeal was voluntary, even though influenced by a desire to avoid the danger involved in facing a sodomy charge. Defendant appealed the judgment to the Appellate Division.

Defendant's contention is that he "was denied his right to appeal by an illegal plea bargain." The illegality asserted is the conditioning of plea and prosecution concessions by the State on the withholding by defendant of the exercise of his right of appeal from a conviction. Since the issue stated was reserved by us in *State v. Spinks*, 66 *N. J.* 568, 573, n. 2 (1975), we certified this appeal on our own motion while it was pending unheard in the Appellate Division. 67 *N. J.* 103 (1975).

In *Spinks, supra*, a *timely* appeal from sentence was brought by a defendant who had pleaded guilty pursuant to a plea agreement. The sentence was within the range of the agreement, and there had been no agreement by defendant not to appeal. The State nevertheless argued that to allow appeal from sentence in such case would be incompatible with the contractual nature of a plea negotiation (at 573) and would encourage frivolous appeals (at 574). We rejected these contentions, but pointed out that the reviewing court should take into account the terms of the plea

agreement, "including the reduction or dismissal of charges" and the fact that "the defendant has freely agreed to the imposition of such sentence as part of the plea negotiations" (66 *N. J.* at 573).

In appraising defendant's contentions, we set to one side, for later treatment herein, the question whether the court should as a matter of sound judicial policy permit a *timely* appeal to be filed by a defendant from a conviction notwithstanding either his bargained for agreement not to appeal or his acceptance of plea agreement benefits conditioned on his not appealing. As indicated at the outset, we have reached an affirmative conclusion on that issue. The here crucial question, however, is whether the mere concurrence of the parties in a plea agreement inclusive of a waiver of appeal, however freely arrived at, should be regarded as *per se* tainted with illegality, and thus operative to activate post-conviction relief by way of validation of an untaken appeal *nunc pro tunc.*

*R.* 3:22–2 permits post-conviction relief for "(a) Substantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey." Ordinarily a petition for such relief may be filed within five years of the judgment or sentence under attack. *R.* 3:22–12. We assume the present petition is filed under (a) as none of the other provisions of *R.* 3:22–2 appears even debatably pertinent. The issue, then, is whether a non-coercive agreement in the nature of a plea agreement becomes a "substantial denial" of a defendant's constitutional or other rights by reason of the inclusion therein of a stipulation against appeal by the defendant, though he is fully represented by counsel in arriving at the agreement. Our determination on that narrow question is in the negative.

The general acceptability of plea negotiation, or "plea bargaining" as it has commonly been denominated, under careful judicial supervision against unreasonable hazard of

the proper interests of either the accused or the State, has been repeatedly recognized in our recent decisions. *State v. Taylor,* 49 *N. J.* 440, 455 (1967) ; *State v. Thomas,* 61 *N. J.* 314, 321 (1972) ; *State v. Jones,* 66 *N. J.* 524 (1975). The practicality, utility and constitutionality of plea negotiations have also been recognized by the United States Supreme Court. See *Santobello v. New York,* 404 *U. S.* 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971) ; *Brady v. United States,* 397 *U. S.* 742, 752–753, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970).

There is what may be fairly characterized as a minority viewpoint that inclusion of a waiver of appeal in a plea agreement is inherently coercive against exercise of the right of appeal. *People v. Butler,* 43 *Mich. App.* 270, 204 *N. W.* 2d 325 (Ct. App. 1972) ; *People v. Ramos,* 30 *A. D.* 2d 848, 292 *N. Y. S.* 2d 938 (1968) ; *cf. Worcester v. C. I. R.,* 370 *F.* 2d 713, 718 (1 Cir. 1966) (disapproving a *judge's* offer to a defendant to suspend sentence if he agrees not to appeal). *Contra: People v. Williams,* 36 *N. Y.* 2d 829, 370 N. Y. S. 2d 904, 331 *N. E.* 2d 684 (Ct. App. 1975) ; *People v. Irizarry,* 32 *A. D.* 2d 967, 303 *N. Y. S.* 2d 332 (1969), aff'd mem. 27 *N. Y.* 2d 856, 317 N. Y. S. 2d 15, 265 *N. E.* 2d 540 (Ct. App. 1970) ; *State v. Gutierrez,* 20 *Ariz. App.* 337, 512 *P.* 2d 869 (Ct. App. 1973) ; *U. S. ex rel. Amuso v. La Vallee,* 291 *F. Supp.* 383 (E. D. N. Y. 1968), aff'd 427 *F.* 2d 328 (2 Cir. 1970) ; *Brown v. Haynes,* 385 *F. Supp.* 285, 291 (W. D. Mo. 1974).

In *People v. Butler, supra,* a defendant charged with armed robbery and assault with intent to commit murder was permitted to plead guilty to a reduced assault charge with a stipulation that after expiration of the period for appeal the armed robbery charge would be dismissed. On appeal of the conviction on the plea the court set aside the plea, holding that the effect of the arrangement was to produce "a chilling effect on the right to appeal" and that it

was therefore "constitutionally impermissible". 204 *N. W.* 2d at 330.

An opposite view on substantially the same fact pattern was taken by the federal district court in the *La Vallee* case, *supra,* where the issue was raised on application for *habeas corpus* after denial of relief to the defendant in the New York state courts. The court asserted that the record before it indicated that the court which took the plea had taken pains to be assured that it was voluntary. 291 *F. Supp.* at 384. It observed that plea agreements generally were approved by the American Bar Association Project on Minimum Standards for Criminal Justice, Pleas of Guilty, *Ibid.,* and it stated that: "Conditioning charge concessions on a waiver of the right to appeal from the sentence on the guilty plea is one method of making a plea agreement enforcible [sic]." *Id.* at 385. The court quoted another federal decision (unreported) in similar circumstances to the effect that while a court could not properly bargain with a defendant, or "put a price" on an appeal, yet "where a defendant makes his own terms and understands them and thereby brings an end to his trial and the separate outstanding indictment against him, he should not be permitted to later reevaluate his position, particularly where the *status quo ante* cannot be restored." *Ibid.*

In affirming in *La Vallee,* the Court of Appeals pointed out that it was not the acceptance of the plea of guilty that was conditioned on waiver of the appeal but only the dismissal of the other outstanding indictment. The defendant's assent to the plea was considered to be "entirely voluntary" and "not the result of unconstitutional compulsion". 427 *F.* 2d at 329.

The current approach to the question under discussion by the New York Court of Appeals is reflected by its recent decision in *People v. Williams, supra.* There defendant, who was under indictment on two counts of murder, had made a pretrial motion to suppress admissions he had made to

the police. After denial of the motion and before trial the parties negotiated for a plea of guilty by defendant to substituted counts of manslaughter in lieu of the murder charges. The prosecutor imposed the condition that defendant waive appeal from denial of the motion to suppress. In justification thereof the prosecutor explained to the trial court that if after the year or more that an appeal could take the decision on the motion were reversed his witnesses would then be unavailable for any trial at that time, thus prejudicing the People. The court sustained the waiver of appeal, finding the arrangement to have been thoroughly discussed with counsel and family and the interrogation by the trial court on the plea and waiver to have been exemplary. 331 *N. E.* 2d at 685.

While perhaps most plea agreements do not contain express waivers of appeal or conditions against appeal, many of them do, and the practice has been defended by some experts in the field. In the Standards Relating to Criminal Appeals, § 2.2(c) (Approved Draft 1971) of the American Bar Association Project on Standards for Criminal Justice, it is provided:

> "Where a case has been tried, prior to final judgment, defense counsel should review the prospects of appeal. One alternative to be considered is whether it *is* in his client's interests to seek mitigation in the grade of the offense or in the severity of the sentence in exchange for a decision to forego appeal."

The commentary to the section notes:

> "In light of the sharply rising number of appeals from criminal judgments, any procedure that might reduce the load upon the appellate courts without diminishing the rights of defendants or undermining the processes of the courts is worthy of serious and thoughtful examination. See *United States ex rel. Amuso v. La Vallee,* 291 *F. Supp.* 383 (*E. D. N. Y.* 1968)."

The Uniform Rules of Criminal Procedure (Approved 1974), provide, in Rule 444(d), that a negotiated plea bars

an appeal based upon any nonjurisdictional defect in the proceedings except an order denying a pretrial motion to suppress evidence or any pretrial motion which, if granted, would be dispositive of the case. Notwithstanding the stated exceptions, Rule 443(a)(4) permits a plea agreement to specify that the defendant will not seek appellate review of an order denying a pretrial motion.[2]

We are quite unpersuaded by the rationale of *Butler, supra,* that tendering concessions to a defendant in return for his agreement not to appeal a conviction is necessarily an unconstitutional "chilling" and therefore deprivation of his right of appeal. We find the analogy of the universally accepted propriety of exchanging sentence and charge concessions for a defendant's guilty plea to be most compelling. In that situation a defendant, undoubtedly motivated by the favorable treatment tendered by the State, surrenders his right to be tried by a jury and to be confronted by witnesses against him. Yet, if the record shows the defendant has pleaded with full understanding of his rights and liabilities, with the advice of counsel, and without compulsion, see *Boykin v. Alabama,* 395 *U. S.* 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), he will not be heard to complain that his plea was involuntary because "moti-

---

[2] The comment to the section explains:

"If the right set out in Rule 444(d) were absolute, in the sense that it could never be surrendered in the plea agreement process, then the result might be to discourage plea negotiations. In every case, the prosecutor would know that notwithstanding the defendant's plea the case really is not "over," as the defendant might still appeal on several grounds unrelated to the sufficiency of the procedures used in receiving the plea. Under such circumstances, it is likely that defendants could not obtain concessions to the extent that they are now obtained, as presently, where (for example) a defendant's pretrial motion to suppress is denied, one of the elements in the bargaining equation is the probability of the trial judge being upheld on appeal. That is, the defendant may gain concessions by his plea because the prosecutor knows that as a consequence of the plea the judge's ruling can no longer be challenged."

vated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." *Brady v. United States,* 397 *U. S.* 742, 751, 90 S. Ct. 1463, 1470, 25 L. Ed. 2d 747 (1970). *Cf. State v. Deutsch,* 34 *N. J.* 190 (1961); *State v. Herman,* 47 *N. J.* 73 (1966).

If the tender by the State of sentence and charge concessions in return for a plea of guilty does not *per se* chill the defendant's exercise of his right to contest his guilt at a trial rather than plead guilty, so as to render the plea arrangement unconstitutional as involuntary, we fail to see the force of the "chill" argument when the defendant waives his right to appeal a conviction for similar concessions.

These views are entirely consistent with the principle that in all phases of plea dealing the prosecutor (*a fortiori,* the court) may not deal oppressively or coercively with the defendant, whether in negotiating for a waiver of appeal or for a plea of guilty. If the trial court on review of the agreement is not satisfied that the arrangements are free from such an element it may and should refuse approval. And an assertion by a defendant that he was dealt with coercively or oppressively by the State in exacting a waiver of appeal will, if established, warrant an application for post-conviction relief. But defendant has made no such allegations here, and the record would belie it if asserted.

In considering whether a prosecutor has overreached in inducing a surrender by a defendant of his rights a useful analogous guide may be found in the principle that "a sentence may not be increased [by a court] because a defendant defended against the charge or insisted upon his right of appeal." *State v. Poteet,* 61 *N. J.* 493, 496 (1972). On the other hand, "[i]t would be grossly unfair to the many if all had to be sentenced without regard to their acknowledgement of guilt or their aid to the State in coping with

crime, merely because a prospect of favorable treatment could induce someone to abandon his defense or his appeal." *State v. DeStasio*, 49 *N. J.* 247, 260, *cert.* den. 389 *U. S.* 830, 88 S. Ct. 96, 19 L. Ed. 2d 89 (1967).

It is obvious that a pronouncement by this court of the flat illegality under any circumstances of an agreement by a defendant to waive an appeal would operate substantially to cut down the incentive of prosecutors in many cases to offer what particular defendants and their attorneys might regard as worthwhile inducements to forego that right. Discouragement of plea negotiation to that extent does not appear to us consistent with sound judicial policy.

We do not share the view that there is an affirmative public policy to be served in fostering appeals, whether civil or criminal, such that the waiver of an appeal by a defendant is *per se* against the public interest. It has been said, to the contrary, that "[t]he settlement of litigation ranks high in our public policy." *Jannarone v. W. T. Co.*, 65 *N. J. Super.* 472, 476 (App. Div.), certif. den. 35 *N. J.* 61 (1961). That view properly applies to criminal as well as civil litigation, particularly in this era of proliferation of criminal appeals, provided always the administration of such a settlement is fair, free from oppressiveness, and sensitive to the interests of both the accused and the State.

Although the issue of the binding effect of an appeal-waiver in relation to *timely* direct appeals, as distinguished from post-conviction applications, is not raised on this record, we deem it desirable, while our attention is drawn to the general problem, to formulate and announce our conclusions thereon in the interests of a comprehensive disposition of the whole question. Notwithstanding we have found no impairment of public policy in the incorporation of appeal-waivers or conditions against appeal in an otherwise uncoerced and voluntary plea agreement, we think it salutary to permit a defendant to file an appeal from a conviction if he does so timely, notwithstanding an unexception-

able agreement not to. Of course, a defendant who has obtained sentence or charge concessions in consideration of the appeal-waiver would be subject to their revocation, at the option of the State, immediately upon the filing of the appeal. *State v. Rhein,* 117 *N. J. Super.* 112, 121 (App. Div. 1971). The consequent reinstatement of a charge dismissed as part of the plea agreement, or the resentencing of a defendant sentenced pursuant thereto, would not, in such circumstances, constitute double jeopardy. *Id.* at 119–121.

▇ In the light of the adverse consequences to the defendant of a rescission of an agreement not to appeal, as just outlined, it seems to us that a defendant who has not pleaded guilty, but has been convicted after trial, remains desirous of securing appellate review of the conviction and files therefor in time, should be allowed his appeal. The situation of such a defendant differs significantly from that of one who has pleaded guilty. The latter cannot disavow his plea except in limited types of situations. *State v. Herman, supra.* On the other hand, a defendant who has never admitted his guilt should, as we view the interests of justice and appropriate policy considerations, not be deemed to have irrevocably waived his right of direct appeal from a conviction unless he fails to file an appeal within the time provided therefor by law.

· It may be argued that to allow a defendant to disregard an agreement not to appeal, arrived at fairly in a plea negotiation, would be to discourage plea bargaining in general. We think not, having in mind that the appeal must be brought within 45 days of the conviction. *R.* 2:4–1(a). Prosecutors will recognize that the case will be a rare one in which a defendant who has received concessions as to sentences or charges for an agreement not to appeal a collateral conviction will be willing to forfeit those benefits for the, at best, uncertain prospects of securing a reversal, with the equal uncertainty, in most cases, as to the outcome

of a retrial. It is, moreover, not likely that the State will be prejudiced if required to try once-dismissed charges when the existence of such an exigency will be revealed within 45 days of the consummation of the plea agreement, and less than that in many instances.

■ We think it salutary, in the interests of a thorough understanding by a defendant of his rights, that he be fully apprised thereof by the judge at the time of approval by the court of a plea agreement involving a waiver of appeal and when sentence is pronounced. He should then be explicitly informed that notwithstanding his agreement not to appeal the conviction he may nevertheless file a timely appeal, but that if he does so, then, at the option of the prosecutor, the agreement will become inoperative and he may be resentenced on all convictions and pleas involved in the agreement and that any charges dismissed pursuant thereto may be reinstated.

■ We return to the case of the defendant here before us. Although there was disregard, perhaps unwitting, of the requirements of the Administrative Directive, cited above, that the terms of the plea agreement be reviewed on the record in open court, there is, as already noted, no contention by defendant that there was any oppression or coercion in the negotiation of this agreement between the defendant, attended by counsel, and the State. Moreover, he was fully apprised of his right of appeal. There having been no violation of public policy or of defendant's rights in his voluntary decision not to appeal the armed robbery and associated convictions, there was no proper basis for the grant of post-conviction relief on an application filed ten months after the imposition of sentences on such convictions.

Judgment affirmed.

SCHREIBER, J. (concurring). Certification was granted in this case to consider the efficacy of a defendant's express waiver of a right of appeal as part of a plea bargain. *State*

*v. Spinks*, 66 *N. J.* 568, 573 n. 2 (1975). That is not the issue raised under the facts of this case. The agreement which the parties reached did not include a provision not to appeal from the plea bargain. Rather, as a part of the agreement, it was understood that the jury trial conviction of armed robbery would stand and the sodomy indictment be dismissed. Under these circumstances the defendant's acceptance of the jury verdict should be deemed to be in the same category as a plea of guilty to armed robbery.

A conviction follows whether one pleads guilty or is found guilty by a jury. 4 *Blackstone, Commentaries* c. XXVII; *Schireson v. State Bd. of Medical Examiners*, 130 *N. J. L.* 570 (E. & A. 1943); *State v. Compton*, 28 *N. J. Super.* 45 (App. Div. 1953). By voluntarily and knowingly agreeing that he would not appeal from the jury verdict, Gibson conceded the propriety of that verdict. Even now he does not proclaim his innocence. Where the defendant, with the adequate advice and explanation of counsel of the consequences of voluntarily accepting the jury verdict, chooses to do so, his position as to his guilt is substantially the same as if he had pleaded guilty. The factual support of guilt has been established by the jury, and the result has been knowingly and willingly accepted by the defendant. The situation equates to a guilty plea.

It is well settled that where a defendant, having pleaded guilty, seeks to withdraw that plea, "it may not be withdrawn except pursuant to leave granted in the exercise of the court's discretion." *State v. Deutsch*, 34 *N. J.* 190, 197 (1961). He must demonstrate manifest injustice. *State v. Deutsch, supra; State v. Humphreys*, 89 *N. J. Super.* 322 (App. Div. 1965). This is particularly true where the guilty plea is part of a plea bargain. *State v. Huntley*, 129 *N. J. Super.* 13 (App. Div. 1974), certif. den. 66 *N. J.* 312 (1974); *State v. Fisher*, 132 *N. J. Super.* 313 (App. Div. 1975); *State v. Herman*, 47 *N. J.* 73, 79 (1966). The burden of proof rests on the defendant. That burden, which

is equally applicable here,[1] was not met, and the trial court did not abuse its discretion in refusing to permit the defendant to renege on his agreement not to appeal from the jury verdict of guilty.

In passing it may be noted that the defendant does not desire to nullify the entire plea bargain. He does not seek to reverse dismissal of the sodomy charge or to rescind his guilty pleas to the escape and malicious damage indictments. He is using the post-conviction relief procedure as a method to enable him to appeal out of time.

The majority has properly concluded that a plea bargain which encompasses a waiver of appeal is not *per se* illegal. Plea bargaining, which has become a "legitimate and respectable adjunct of the administration of the criminal laws" [*State v. Thomas*, 61 *N. J.* 314, 321 (1972)], includes the surrender of such fundamental rights as the entitlements to a jury trial and privilege against self incrimination. *Boykin v. Alabama*, 395 *U. S.* 238, 243, 89 *S. Ct.* 1709, 23 *L. Ed.* 2d 274, 279 (1969); *State v. Raymond*, 113 *N. J. Super.* 222, 227 (App. Div. 1971); Bishop, "Waivers in Pleas of Guilty," 60 *F. R. D.* 513 (1973). Certainly, the right of appeal is not more sacrosanct. There is no valid constitutional reason which justifies elimination of the waiver of appeal as part of a plea bargain. *Brown v. Haynes*, 385 *F. Supp.* 285 (W. D. Mo. 1974).

Despite a defendant's agreement not to appeal from convictions entered in accordance with a plea bargain or from convictions announced by a jury, the majority, although agreeing that sound judicial policy warrants the validity of such provisions, nevertheless provides that a defendant may

---

[1] Both the majority and dissenting opinions agree that the defendant's petition for relief was grounded on *R.* 3:22(a). Under that Rule the defendant must, in the absence of constitutional bases as is the case here, establish a "[s]*ubstantial* denial" of his rights under the laws of the State. It follows that manifest injustice is a necessary ingredient before relief may be granted.

file a notice of appeal within 45 days [*R.* 2:4–1(a)] after sentence has been imposed in accordance with the understanding. If he does so, the prosecutor then has the option to rescind the plea bargain agreement.[2] The new rule presumably is based on "the interests of justice and appropriate policy considerations" which the majority finds justifies an appeal for a defendant who has never admitted his guilt. Conspicuous by its absence is any delineation of precisely what those interests of justice or policy considerations consist of, particularly where the defendant has admitted his guilt.

Societal interests call for the enforcement of such agreements after judicial sanction has been obtained. As Justice Mountain recently wrote for a unanimous court in *State v. Thomas, supra,*

If plea bargaining is to fulfill its intended purpose, it must be conducted fairly on both sides and the results must not disappoint the reasonable expectations of either. [61 *N. J.* at 321].

So long as the defendant has knowingly and voluntarily entered into the plea agreement and the terms have been considered and approved by the court, policy considerations call for enforcement. The majority would not permit a defendant to abrogate provisions of a plea bargain which does not include as one of its terms an appeal waiver provision. Yet, is not the surrender of the right to a jury trial — an ingredient of every plea — as vital to the defendant as the waiver of a right to appeal? No sound reason exists for the singular treatment accorded plea bargains which contain a no appeal provision.

This court, after careful consideration and after receipt of comments from the bar and public, has recently promulgated general rules governing plea bargains. No suggestion

---

[2]The option to revoke is contrary to the recently announced policy in *State v. Spinks, supra,* which prohibited the State from withdrawing from the terms of a plea bargain which is modified on appeal.

that the defendant should be permitted to violate a term of his plea bargain was made by any interested person. No unfairness to any defendant has been demonstrated where the guidelines of the Administrative Directive, 94 *N. J. L. J.* 1 (1971), now incorporated in the Rules (*R.* 3:9–3) have been followed. To permit the defendant willy nilly to abrogate a concededly lawful provision of the agreement during a 45 day period after sentence smacks of letting him "play fast and loose with our courts." *State v. Herman, supra,* 47 *N. J.* at 79.

The majority asserts that it is not likely that the State will be prejudiced if required to try dismissed charges. This assertion does not square with reality. Justice Proctor in *State v. Herman, supra,* pointed out one practical difficulty which the prosecution must face:

> \* \* \* It is a difficult task at best for the State to assemble its witnesses and prepare its case for a trial on a specified date; it is neither fair nor just to compel the State to repeat this procedure as to the same defendant when the first trial is terminated by the defendant's own guilty plea given freely and understandingly. [47 *N. J.* at 78–79]

Further, a 45[3] day period within which to file the notice of appeal will result in more than a 45 day delay of trial. After the prosecutor has rescinded the agreement, which presumably will be a reasonable time after the notice has been filed, the matter will have to be rescheduled. Attorneys will have to be available and the case fit in with the trial court's calendar. Trial delays of two or more months will likely occur. Conviction rates decrease, and presumably the number of guilty who are freed increase, as the time intervals between indictment and trial widen. See Banfield & Anderson, "Continuance in the Cook County Criminal Courts," 35 *U. Chi. L. Rev.* 259, 300 (1968); *Barker v. Wingo,* 407 *U. S.* 514, 521, 92 S. Ct. 2182, 33 *L. Ed.* 2d

---

[3]The time for appeal may be extended beyond 45 days. *R.* 2:4–4.

101 (1972). The rule adopted by the majority not only serves no useful function but can defeat justice by unjustifiable delay.

With respect to appellate review, a differentiation must be made between an agreement not to appeal from a jury verdict which is one element of a plea bargain and an agreement not to appeal from the plea bargain. In the former the defendant is accepting the jury verdict and waiving trial and pretrial errors. He acknowledges his guilt. It is comparable to his other guilty plea or pleas made at the time the plea bargain is submitted to the court for approval.[4]

Hitherto the scope of appellate review of a plea bargain, even in the absence of any agreement not to appeal, has been limited to ascertaining whether the plea was made voluntarily and with a full understanding of its consequences [*Brady v. United States*, 397 *U. S.* 742, 90 *S. Ct.* 1463, 25 *L. Ed.* 2d 747 (1970)], to determining if the plea bargain was kept [*State v. Jones*, 66 *N. J.* 524 (1975)], and to making certain that the sentence was not excessive [*State v. Spinks, supra*]. As a matter of policy I would continue to grant a defendant the right to appeal for relief based on those reasons, irrespective of the defendant's express agreement not to appeal from a plea bargain.

Permitting the plea agreement to be rescinded at the option of the prosecutor after the defendant files a notice of appeal contrary to the parties' express understanding, even though the defendant has voluntarily and knowingly admitted his guilt, does not serve the interests of the de-

---

[4]It may be noted that only one of the cases relied upon by the dissent involved waiver of an appeal of a conviction after trial. *Worcester v. Commissioner of Internal Revenue*, 370 *F.* 2d 713 (1 Cir. 1966). After conviction for filing false income tax returns, the trial court offered to place the defendant on probation if he did not appeal, and, if he did, he would receive an 18 month sentence. The defendant agreed not to appeal. This was clearly an involuntary, coercive agreement bargained for by the court.

fendant or of the State and is contrary to the sound administration of justice.

I concur in the judgment of affirmance.

PASHMAN, J. (dissenting). The principal question posed by this appeal is whether the State may require a criminal defendant to waive his right of appeal as part of a negotiated plea agreement. Because this issue was specifically reserved in *State v. Spinks*, 66 *N. J.* 568 (1975)[1], we certified the instant appeal on our own motion while it was pending unheard in the Appellate Division to consider this important question. *R.* 2:12–1. 67 *N. J.* 103 (1975).

Today the majority concludes that while judicial policy considerations require that a defendant who has agreed not to appeal a *conviction* as part of plea negotiations must be permitted to do so before the expiration of the 45-day period for bringing a direct appeal, the agreement may not be challenged out of time by means of a petition for post-conviction relief. *Ante* at 501. The Court has also concluded that it would be unwise for us to characterize an agreement not to appeal as illegal under any circumstances because such a "pronouncement" would tend to discourage plea bargains to an extent inconsistent with sound judicial policy. *Ante* at 511. I disagree with that approach and because I am convinced that the inclusion of a waiver of appeal provision is an impermissible element of plea negotiations with criminal defendants, I would reverse and permit Gibson to appeal out of time.

On October 21, 1971, defendant Jacklyn Gibson and Ernest Bryant[2] were indicted by the Salem County Grand Jury on charges of robbery and robbery while armed in violation of *N. J. S. A.* 2A:141–1 and *N. J. S. A.* 2A:151–5. A separate indictment dated the same day also charged Gibson

---

[1]*See State v. Spinks, supra* at 573, n. 2.

[2]*See State v. Bryant*, 68 *N. J.* 532 (1975), also decided today.

with escaping from the lawful custody of a police officer in violation of *N. J. S. A.* 2A:104–6. A third indictment was returned against defendant on January 27, 1972 charging him with malicious destruction of county property in violation of *N. J. S. A.* 2A:122–1 while he was incarcerated in the Salem County Jail. Finally, Gibson was also indicted for sodomy contrary to the provisions of *N. J. S. A.* 2A:143–1.[3]

Gibson was convicted of the robbery charges by a jury on December 16, 1971. Although the record does not disclose the exact date, some time after his conviction, but prior to sentencing, his attorney entered into plea negotiations with the prosecutor's office concerning the indictments still pending against him. According to Gibson's trial counsel, the prosecutor agreed to dismiss the sodomy charge in exchange for defendant's guilty pleas on the escape and destruction of property charges if Gibson also promised not to appeal his conviction on the robbery charges.[4]

On July 21, 1972, Gibson was sentenced to a term of 10 to 12 years in the State Prison on the robbery conviction and a concurrent 2–3 year term on the armed robbery conviction. On the same day, the sentencing judge also accepted Gibson's guilty pleas on the escape and malicious destruction of property charges and sentenced him to consecutive terms of 2½ to 3 years in the State Prison on the latter two charges to run concurrently with the sentence

---

[3] The record does not disclose the date of the last indictment.

[4] I note that despite our directive in 94 *N. J. L. J.* 1 (1971), that all plea bargains must be placed in the record in open court, this procedure was not followed in the instant case. *See also State v. Thomas,* 61 *N. J.* 314, 321 (1972). As a result, Gibson's trial counsel was called as a witness at his post-conviction relief hearing to testify about the terms of the agreement.

imposed for the robbery conviction. The sodomy charge was subsequently dismissed.[5]

On June 8, 1973, Gibson filed a *pro se* petition for post-conviction relief. The petition recited that no direct appeal had been taken from the robbery conviction but, nevertheless, alleged that the evidence was insufficient to sustain the conviction and that the State had used "pending charges * * * to enhance the punishment inflicted." On October 25, 1973, the public defender amended the petition alleging that Gibson had not exercised his right of appeal on the robbery conviction in reliance on the plea bargain with the prosecutor's office.

On November 30, 1973, the petition was heard by the same judge who had tried and sentenced Gibson. The relief sought by defendant was leave to appeal out of time. In support of the application Gibson offered the testimony of the attorney who represented him at the robbery trial. After hearing evidence that the plea bargain did include a waiver of Gibson's right of appeal and that he did rely on the agreement in failing to appeal the robbery conviction, the trial court "accept[ed] that testimony in its entirety that such a bargain was made." The court, however, denied the requested relief, stating:

I don't see why he should be granted the relief he asks for at the present time. He had that relief at that time. He knew he could have taken an appeal — he chose voluntarily not to do so. The State has lived up to its bargain. The State would be prejudiced to attempt, at this late stage in the proceedings, to seek to try him on the sodomy indictment because of the lapse of time. The State might not have plea bargained for the sentences that were imposed on him on the escape and malicious damage to property charge; and I don't believe that under the circumstances the defendant has been deprived of any of his constitutional or other legal rights. A bargain at full arm's length with the advice and

---

[5]At the time of sentencing, Gibson was informed by the court that he had a right to appeal the sentences within 45 days. *See* R. 3:21–4(f).

service of a qualified representative — legal representative — provided him by the public defender's office, and I'm denying your motion for relief to appeal out of time.

An order reflecting the denial of Gibson's petition was signed by the trial court on December 19, 1973, and on January 16, 1974 a notice of appeal from the denial was filed with the Appellate Division. We certified the appeal on February 19, 1975.

I

At the outset, it must be recognized that defendant seeks to challenge the propriety of the plea bargain by means of a petition for post-conviction relief rather than by direct appeal. The grounds for such relief are limited,[6] and it is clear that post-conviction relief may not be used as a substitute for direct appeal. *R.* 3:22–3; *State v. Trantino,* 60 *N. J.* 176, 180 (1972); *State v. Smith,* 43 *N. J.* 67, 74 (1964), *cert.* den. 379 *U. S.* 1005, 85 *S. Ct.* 731, 13 *L. Ed.* 2d 706 (1965). *See also State v. Poteet,* 61 *N. J.* 493, 495 (1972).

In my view, however, defendant's application is properly cognizable under *R.* 3:22–2(a). Our rules provide for appeals as of right from, among others, final judgments of the Superior Court trial divisions and the county courts.

---

[6]*R.* 3:22–2 provides:

A petition for post-conviction relief is cognizable if based upon any of the following grounds:

(a) Substantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey;

(b) Lack of jurisdiction of the court to impose the judgment rendered upon defendant's conviction;

(c) Imposition of sentence in excess of or otherwise not in accordance with the sentence authorized by law.

(d) Any ground heretofore available as a basis for collateral attack upon a conviction by habeas corpus or any other common-law or statutory remedy.

*R.* 2:2–3(a). *See also R.* 2:3–2. Moreover in *Midler v. Heinowitz,* 10 *N. J.* 123, 129 (1952), this Court, in an opinion by Justice Brennan, made it clear that our judicial system "contemplates one appeal as of right to a court of general appellate jurisdiction." If the plea bargain by which defendant promised not to exercise his right of appeal improperly denied him a right guaranteed by the laws of this State, then he has alleged a substantial denial of his rights under our law within the meaning of *R.* 3:22–2(a).[7]

Because I view Gibson's claims properly cognizable under *R.* 3:22–2(a), I proceed to an examination of the merits of his application.

## II

Both the United States Supreme Court and this Court have recognized that plea bargaining is a useful tool in the administration of criminal justice. *Santobello v. New York,* 404 *U. S.* 257, 260, 92 *S. Ct.* 495, 30 *L. Ed.* 2d 427 (1971); *State v. Thomas,* 61 *N. J.* 314, 321 (1972); *State v. Taylor,* 49 *N. J.* 440, 455 (1967). *See also* ABA Project on Standards for Criminal Justice, *Standards Relating to Pleas of Guilty,* § 1.8 (Approved Draft 1968). Despite our general approval of the practice of plea negotiation between the

---

[7]There is also a more pragmatic reason for entertaining this petition. Gibson relied on the challenged plea bargain in declining to prosecute a timely appeal. In this respect, an analogy can be made to the situation before the court in *State v. Allen,* 99 *N. J. Super.* 314 (Law Div. 1968), where defendant alleged that his conviction should be set aside because he had not been advised of his right to appeal. In concluding that the matter should be considered on the merits, the court said:

> With respect to the propriety of the court hearing this matter on an application for post-conviction relief, the State argues that this matter is the subject matter of an appeal. * * * However, in cases such as this, where a defendant claims he did not know of his right to appeal and the time for filing an appeal has expired, the State's position would forever bar the defendant from obtaining judicial relief. [99 *N. J. Super.* at 316; citations omitted]

prosecutor and criminal defendants, we have held that the ultimate bargain struck by the parties is not entirely free from judicial scrutiny. In *State v. Spinks, supra,* Justice Sullivan, writing for the Court, rejected the argument that appellate review of sentences imposed as the result of plea bargains was incompatible with the contractual nature of the plea negotiation and said:

We conclude that appellate review of a sentence imposed pursuant to a plea bargain is proper and is not incompatible with the concept of plea negotiations. A defendant in a criminal case has a right of appeal from the final judgment of conviction, including the sentence. [66 *N. J.* at 573 (footnote omitted)]

In my view, the considerations which we identified in *Spinks* are equally applicable in the instant case. The appellate courts have an obligation to review the terms of a plea bargain where, as here, the agreement forecloses substantial rights of the defendant.[8] The majority notes that a guilty plea freely and voluntarily entered renders compliance with many constitutional guarantees unnecessary. *Ante* at 510. Recognition of this fundamental principle, however, is not responsive to the real problem confronting us, *i. e.,* what *terms* of a negotiated plea agreement are impermissible as a matter of judicial policy. Decisions such as *State v. Raymond,* 113 *N. J. Super.* 222 (App. Div. 1971) and cases cited therein which deal with a guilty plea as a waiver of prior constitutional rights do not address the latter consideration and are thus of little relevance in resolving the present appeal.

---

[8]See ABA Project, *supra, Standards Relating to Criminal Appeals,* § 1.3 (Approved Draft 1968):

    (a) A defendant should have the right to seek review of any final judgment adverse to him, including:

\*    \*    \*    \*    \*    \*    \*    \*    \*

        (iii) a conviction based upon plea of guilty or nolo contendere.

In the present case, defendant argues that the agreement not to appeal the robbery conviction was illegal and should be vacated, returning the parties to their original status. The State, on the other hand, emphasizes that Gibson voluntarily entered into the agreement and thus should not be permitted to renege on it. Although the precise question is a novel one before this Court, the problem has been considered in other jurisdictions with varying results.

In *People v. Butler,* 43 *Mich. App.* 270, 204 *N. W.* 2d 325 (Ct. App. 1972), defendant pleaded guilty to a reduced charge in exchange for the prosecutor's agreement to dismiss two other outstanding charges against defendant at the expiration of the appeal period. Emphasizing the judicial sensitivity to the rights of an accused in entering a guilty plea, the court characterized the right of appeal from such a conviction as one of "substantial value." 204 *N. W.* 2d at 330. Finding it impermissible for the state to induce a defendant to waive his right of appeal as part of a plea agreement, the court said:

> If such bartering were to be permitted, the prosecution would indeed be able to insulate, in many cases, guilty pleas accepted in contravention of standards which have been developed with painstaking care to afford defendants their basic rights. To state that plea agreements are now an accepted practice in this State, then, is not to state that there are no limits to the conditions imposed thereon. [204 *N. W.* 2d at 330].

To prevent the "chilling effect" that this practice would have on those who are deterred from appealing, the court concluded that plea convictions must be vacated whenever they are based on an agreement by defendant to waive his right of appeal. 204 *N. W.* 2d at 331. *See also People v. Ledrow,* 53 *Mich. App.* 511, 220 *N. W.* 2d 336 (Ct. App. 1974).

A New York appellate court has also concluded that the state should not be permitted to insulate a conviction from appellate review in this context. In *People v. Ramos,* 30

*A. D.* 2d 848, 292 *N. Y. S.* 2d 938 (App. Div. 1968), defendant pleaded guilty to a charge of murder in the second degree to avoid a possible death sentence. As part of the bargain, the state stipulated that a robbery indictment based on the same incident would be dismissed 31 days after sentencing, provided that no appeal was taken. In accepting defendant's plea, the court specifically informed him that should he attempt to disturb the plea or conviction, " 'of course *the plea will not stand,* and *also* the promise of the district attorney to dismiss the robbery charge will not stand.'" 292 *N. Y. S.* 2d at 939 (emphasis in original). In concluding that defendant had been wrongfully denied his right of appeal, the court observed:

> The net effect of the conditions so imposed was that defendant was confronted with the "choice" of either accepting whatever punishment the court might mete out, no matter how severe, excessive, or unjust, or appealing from the judgment of conviction, in which case the plea, pursuant to the conditions attached thereto, would not be permitted to stand and defendant would presumptively be required to stand trial for murder in the first degree, thereby exposing himself to the possibility of receiving the death sentence if convicted. Under the circumstances, it could not have been reasonably contemplated that defendant would exercise his "option" to appeal. In practical effect, the court virtually insulated the conviction and the sentence imposed thereon against appellate review. The court's actions were tantamount to a denial of defendant's right to appeal. [292 *N. Y. S.* 2d at 939–40].

In *Ramos,* however, the court vacated the judgment of conviction and remanded the case for resentencing in order for the defendant to perfect an appeal. 292 *N. Y. S.* 2d at 940.[9]

---

[9]*But see People v. Irizarry,* 32 *App. Div.* 2d 967, 303 *N. Y. S.* 2d 332 (App. Div. 1969), aff'd mem. 27 *N. Y.* 2d 856, 317 *N. Y. S.* 2d 15, 265 *N. E.* 2d 540 (1970), where the court distinguished *Ramos* on the basis that in Irizarry there was no express provision for vacation of the guilty plea in the event of an appeal:

[I]t was merely stipulated that an additional indictment would not be dismissed until the time to appeal from the conviction based on appellant's guilty plea had expired. [303 *N. Y. S.* 2d at 333].

An analogous situation was before the First Circuit in *Worcester v. Commissioner of Internal Revenue,* 370 F. 2d 713 (1 Cir. 1966), involving a series of consolidated petitions to review decisions of the Tax Court. The Tax Court found deficiencies in Worcester's tax returns for 1947–52 and upheld the imposition of fraud penalties and interest. On the issue of fraud, however, the Tax Court made no findings for three years. relying instead on collateral estoppel by virtue of Worcester's prior criminal conviction for willfully filing false returns. On appeal, the court concluded that the Tax Court's reliance on collateral estoppel was misplaced since the District Court in the criminal case imposed a suspended sentence upon Worcester in exchange for his agreement not to appeal the conviction. 370 F. 2d at 718–19.[10] More recently, in *Clark v. Universal Builders, Inc.,* 501 F. 2d 324, 341 (7 Cir. 1974), *cert.* den. 419 U. S. 1070, 95 S. Ct. 657, 42 L. Ed. 2d 666 (1974), the Seventh Circuit expressed similar sentiments in concluding that it was error for the trial court to dismiss defendant's counterclaim subject to automatic reinstatement in the event plaintiffs appealed from the court's directed verdict

See also *People v. Williams,* 36 N. Y. 2d 829, 331 N. E. 2d 684, 370 N. Y. S. 2d 904 (1975), in which the New York Court of Appeals recently sustained a plea bargain involving defendant's waiver of his right to appeal the denial of a pretrial suppression motion.

[10] *Cf. North Carolina v. Pearce,* 395 U. S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), in which the court concluded that neither the equal protection clause nor the double jeopardy provision of the federal constitution imposes an absolute bar to a more severe sentence upon reconviction after an appeal, but that

Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge. [395 U. S. at 725, 89 S. Ct. at 2080, 23 L. Ed. 2d at 669]

for defendants. Citing *Worcester, supra,* the court agreed with plaintiffs that the arrangement was a "highly improper attempt at coercing plaintiffs into waiving their right to appeal * * *." 501 *F.* 2d at 341.

Although the foregoing should serve to illustrate the commitment on the part of some courts to prevent attempts to bargain away access to the appellate process, this view is by no means universally accepted. Indeed in *Brown v. Haynes,* 385 *F. Supp.* 285 (W. D. Mo. 1974), the District Court refused to grant a writ of habeas corpus on the ground, among other things, that petitioner had been coerced into waiving his right to appeal a conviction for robbery following a jury trial in the expectation that an outstanding charge would be dropped. In deciding *Brown,* however, the court focused on the knowing and voluntary nature of petitioner's decision not to appeal, without analyzing the more fundamental question of whether the State should be permitted to include a waiver of appeal provision in its plea negotiations. 385 *F. Supp.* at 292–93. I have examined *Brown, supra,* and in my judgment it is not persuasive. Therefore, I reject it. *See also United States ex rel. Amuso v. LaVallee,* 291 *F. Supp.* 383 (E. D. N. Y. 1968), aff'd *per curiam* 427 *F.* 2d 328 (2 Cir. 1970) ; *State v. Gutierrez,* 20 *Ariz. App.* 337, 512 *P.* 2d 869 (Ct. App. 1973) ; *People v. Irizarry, supra.*

I also appreciate the fact that the American Bar Association has suggested that one of defense counsel's duties with regard to criminal appeals is to consider the possibility under some circumstances of including a decision to forego an appeal as part of plea negotiations. ABA Project on Standards for Criminal Justice, *Standards Relating to Criminal Appeals,* § 2.2(c) (Approved Draft 1970) provides:

(c) Where a case has been tried, prior to final judgment, defense counsel should review the prospects of appeal. One alternative to be considered is whether it is in his client's interests to seek mitigation in the grade of the offense or in the severity of the sentence in exchange for a decision to forego appeal.

The commentary to this section, however, adds important limitations to the waiver suggestion. In addition to stressing the importance of both the rights of the accused and the processes of the courts in this context, the commentary also emphasizes that permitting this type of negotiation is the source of potential abuse:

There are, obviously, dangers of overreaching and abuse in a system that permits such negotiations. Reports have been heard of trial judges who refuse probation to some defendants, where otherwise warranted, unless they will agree to forego appeal. [ABA Project, *supra* at 52]

I would also add that plea bargaining, just like other forms of negotiation where the parties may not be of equal bargaining power, is clearly capable of producing unconscionable results. To prevent such abuses, appellate review must be available.

Although the commentary suggests that the principal safeguard against such abuse is open reporting of the basis for any action taken, I believe that a more realistic and straightforward approach is to exclude such negotiations in their entirety. I believe that a total preclusion is necessary not only to vindicate the rights of criminal defendants and to prevent abuses, but to preserve the integrity of the judicial process as well.

It is impermissible to allow criminal defendants to waive their right of appeal as part of a negotiated plea agreement. In reaching this conclusion, I accept the trial court's finding that the instant plea bargain was voluntarily entered into by defendant. The right of appeal implicates many values which transcend the immediate interests of the parties; indeed, appellate supervision of the trial courts and the operation of the appellate process as a device for fashioning new law are at the very heart of our judicial system. Recognition of these values persuades me that it would be unwise for the State to insulate convictions, whether they derive from the trial process or pleas of guilty, from appel-

late review through plea negotiations with criminal defendants. The court has no right to put a price on the right of appeal. Defendant's exercise of that right must be free. *People v. Butler, supra; Worcester v. Commissioner of Internal Revenue, supra.* Since I have concluded that the instant plea bargain contained an impermissible element and was thus illegal from its inception, I have no occasion to resort to the cases dealing with the standards governing the withdrawal of a guilty plea, *e. g., State v. Deutsch,* 34 *N. J.* 190 (1961); *State v. Pomelti,* 12 *N. J.* 446 (1953); *State v. Johnson,* 131 *N. J. Super.* 252 (App. Div. 1974); *State v. Huntley,* 129 *N. J. Super.* 13 (App. Div. 1974), certif. den. 66 *N. J.* 312 (1974).

Accordingly, I would vacate the plea bargain arrived at in the instant case. However, when a bargained-for plea is set aside "the defendant should not emerge free of the collaterally dismissed charges but only of his bargain." *State v. Rhein,* 117 *N. J. Super.* 112, 121 (App. Div. 1971). Thus, I would give defendant the opportunity to withdraw his pleas of guilty to the escape and malicious destruction of property charges, but would reinstate the sodomy indictment.

Although I would not distinguish appeal waiver agreements involving guilty pleas from those following convictions, I believe that even with respect to the latter category of plea negotiations, the majority's insistence upon "timely" challenges is unrealistic. I suggest that at the time of sentencing, or shortly thereafter, the question of appeal is not foremost in the mind of the defendant. Presumably, the plea is the result of the defendant's belief, at the time at least, that such a course is in his interest. The initial flush of satisfaction inevitably becomes overshadowed by the all-too-real consequences of an over-hasty decision. It is only upon reflection and reevaluation of many factors that the defendant is likely to conclude that he desires to take an appeal. To require that this decision must be made within the time limits

permitted for a direct appeal places decisive emphasis upon the post-sentence period in which a defendant is probably most satisfied with the disposition of what may well be multiple, complex charges against him, all involving significant legal implications. In my judgment, the timely requirement insisted upon by the majority will, in practice, frustrate all but a very small number of challenges to this type of plea negotiation.

My personal objections transcend the time restrictions which the majority would impose on a defendant's right of appeal, and are more properly directed to what I perceive as the majority's overall dalliance with the right of appeal. In the instant case, we are asked to pass judgment on the imposition of one of the most severe sanctions at the disposal of society — incarceration. The decision to impose this penalty is not one which can be considered lightly, nor acceded to readily. Moreover, it represents the sort of situation for which appeal is the only real remedy. To further subject it to the vagaries of the plea bargaining process and permit reconsideration of a waiver only within an arbitrarily contracted time period, for me at least, crosses into the impermissible realm of coercion and unconscionability.

It is basically wrong to insist upon a waiver of a fundamental right to appeal as part of a plea bargain; it is unconscionable to refuse to review the propriety of such a waiver. The State should not and may not deal oppressively or coercively with a defendant. Such conduct should warrant an application for post-conviction relief. A prosecutor who insists upon a waiver of the right of appeal has overreached and abused a system that permits plea negotiations. If the Court's opinion represents its particular notions of protecting criminal defendants' rights, it is a theory in which I cannot concur.

I appreciate the problems confronting the State when it is required to prosecute indictments long since dismissed. Evidence is lost, witnesses move, memories dim. Accordingly, I would require a defendant to repudiate an alleged agree-

ment not to appeal within a reasonable time. Unlike the majority, however, I do not believe that a rigid rule governing this time period can, or should, be formulated. What is reasonable will vary with the many circumstances involved in each case, among others, the severity and number of crimes charged and the reasons for seeking an appeal. While the ultimate finding of reasonableness must be decided on a case-by-case basis, I am satisfied that the delay involved in the instant case was not unreasonable.

I would reverse.

SCHREIBER, J., concurring in the result.

*For affirmance*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, CLIFFORD and SCHREIBER and Judge CONFORD.—6.

*For reversal*—Justice PASHMAN—1.

