PEOPLE v BUTLER

1. CRIMINAL LAW—PLEA OF GUILTY—PLEA BARGAINING—VALIDITY.

Plea bargaining is an accepted practice but that does not affect the requirement that plea agreements be freely, understandingly, and voluntarily made (GCR 1963, 785.3[2]).

2. CRIMINAL LAW—PLEA OF GUILTY—RIGHT TO APPEAL—CONSTITUTIONAL LAW.

A defendant has an absolute right to appeal from a conviction based on a plea of guilty (Const 1963, art 1, § 20).

3. CRIMINAL LAW—PLEA BARGAINING—CONSTITUTIONAL LAW—RIGHT TO APPEAL—WAIVER.

It is constitutionally impermissible for the prosecution to induce a defendant to waive his right to appeal in exchange for a plea agreement (Const 1963, art 1, § 20).

4. CRIMINAL LAW—PLEA BARGAINING—CONSTITUTIONAL LAW—RIGHT TO APPEAL—RIGHT TO SPEEDY TRIAL.

An adjournment of a pending case to await the expiration of the appeal period of a previous conviction based on a defendant's plea of guilty, the plea-bargaining agreement being that charges in the pending case will be dismissed if the defendant does not appeal the original conviction, would probably abridge the defendant's constitutional right to a speedy trial (US Const, Am 6; Const 1963, art 1, § 20; MCLA 768.1).

5. CRIMINAL LAW—PLEA OF GUILTY—PLEA BARGAINING—RIGHT TO APPEAL—WAIVER—REMEDY.

The Court of Appeals will vacate a plea of guilty which results in

REFERENCES FOR POINTS IN HEADNOTES
[1,3–5] 21 Am Jur 2d, Criminal Law § 492 *et seq.*
[2] 21 Am Jur 2d, Criminal Law § 495.
[6] 21 Am Jur 2d, Criminal Law § 491.
Court's duty to advise or admonish accused as to consequences of plea of guilty, or to determine that he is advised thereof, 97 ALR2d 549.
[7] 21 Am Jur 2d, Criminal Law § 62 *et seq.*

a conviction whenever the plea is based on a stipulation that the defendant must waive his right to appeal in order to receive all or part of the consideration offered in exchange for his plea.

6. CRIMINAL LAW—PLEA OF GUILTY—ADVICE OF RIGHTS.

The trial court's failure to notify a defendant, prior to acceptance of his plea of guilty, that he waived his right to confront his accusers and his privilege against compulsory self-incrimination constituted reversible error.

7. CRIMINAL LAW—DEFENDANT'S COMPETENCY—DIAGNOSTIC FACILITY—MANDATORY COMMITMENT—COURT RULES.

Commitment to a diagnostic facility to determine competency to stand trial is mandatory upon a petition by the defendant for such a commitment, and the trial court may not deny the petition on the basis of a preliminary psychiatric examination (GCR 1963, 786.3).

Appeal from Macomb, George R. Deneweth, J. Submitted Division 2 September 7, 1971, at Grand Rapids. (Docket No. 10985.) Decided October 24, 1972.

Joseph Earl Butler was convicted, on his plea of guilty, of assault with intent to do great bodily harm less than murder. Defendant appealed. Affirmed, 36 Mich App 615. Leave to appeal granted, 387 Mich 756, and remanded by the Michigan Supreme Court for reconsideration in view of its decision in *People v Harrison,* 386 Mich 269. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Thaddeus F. Hamera,* Chief Appellate Lawyer, and *Stephen F. Osinski,* Assistant Prosecuting Attorney, for the people.

*Herman C. Campbell,* for defendant on appeal.

## On Remand

Before: Lesinski, C. J., and Quinn and Bronson, JJ.

Lesinski, C. J. Defendant, Joseph Earl Butler, pleaded guilty to a charge of assault with intent to do great bodily harm less than the crime of murder, MCLA 750.84; MSA 28.279. This Court previously affirmed defendant's conviction on October 26, 1971, in an opinion reported at 36 Mich App 615. Thereafter, the Supreme Court granted leave to appeal and remanded the instant case for our further consideration in light of its decision in *People v Harrison,* 386 Mich 269 (1971).

Defendant was initially charged with armed robbery, MCLA 750.529; MSA 28.797, and assault with intent to commit murder, MCLA 750.83; MSA 28.278. It was alleged that defendant had robbed a grocery store on the night of May 2, 1970, and, in the course of making his escape, had been fired upon by the store owner. Testimony at the plea-taking revealed that defendant had returned the store owner's fire, and then resumed his flight from the scene.

On June 3, 1970, a preliminary examination was held and defendant was bound over to circuit court on both counts. He was arraigned on June 26, 1970. Subsequently, defendant's attorney filed a petition for diagnostic commitment to determine defendant's competency to stand trial pursuant to GCR 1963, 786. The trial court ordered that a "preliminary psychiatric evaluation" be scheduled for defendant and the case was adjourned on July 14, 1970, pending the outcome of the examination.

On September 16, 1970, trial was set on the armed robbery count for October 21, 1970, and October 23, 1970 was designated as the date for

trial on the assault charge. The trial court thereafter issued an order denying defendant's request for diagnostic commitment on September 24, 1970.

Defendant went to trial on the armed robbery count as scheduled. A jury was selected and sworn and testimony was taken. On the second day of the proceedings, however, the trial judge, *sua sponte,* declared a mistrial because of what he termed misconduct on the part of both the defense and prosecution. He did not specify to what misconduct he referred. Trial on the armed robbery charge was reset for "the first or second week" of November, 1970. The record contains no indication as to why a continuance was granted on the assault charge from the October 23 trial date.

Then, on November 10, 1970, defendant pleaded guilty to the added count of assault with intent to commit great bodily harm less than murder. The prosecution moved to add the second count with the stipulation that the armed robbery charge would be nol-prossed at the end of the 60-day appeal period.[1] After the trial court sentenced defendant to nine to ten years imprisonment at a

---

[1] *"Mr. Pagano:* * * * We would move to add this count two with the stipulation that, at the end of the 90-day appeal period—

*"The Court (interposing):* Sixty days.

*"Mr. Pagano:* The robbery armed would be, we will put in a motion for nolle prosequi.

*"The Court:* Have you talked this over with the Detective Sadecki and the officers in charge of this case?

*"Mr. Pagano:* Yes, your Honor, we have. Officer Sadecki is in court.

*       *       *

*"The Court:* Okay. I will accept the second count on that basis.

*"Mr. Kauflin:* It would be my understanding, Mr. Pagano, you are adding a second count, MSA 28.279, assault with intent to do great bodily harm less than the crime of murder.

*"Mr. Pagano:* That is right.

*"Mr. Kauflin:* At the end of the running of the appeal period, both the previous charges lodged against this defendant would be nolle prosequi?

*"Mr. Pagano:* That is right."

hearing on December 4, 1970, defendant personally informed the trial court that he intended to appeal the conviction.

The people then took steps to bring defendant to trial on the armed robbery charge. Trial was rescheduled for February 3, 1971. On that date, however, the case was adjourned over term "to await outcome of the appeal" of the assault conviction. Thereafter, on April 7, 1971, notice of trial was issued for May 11, 1971. Five days prior to the May date, Judge George R. Deneweth, who had presided over the October mistrial, the plea-taking proceeding, and sentencing, disqualified himself.

Then, defendant moved to quash the information in the armed robbery case on double jeopardy grounds. Judge Hunter Stair granted defendant's motion on June 8, 1971.

In *Harrison, supra,* defendant was arrested on a breaking and entering charge. While free on bond awaiting trial of the case, defendant was arrested on a second charge of breaking and entering, unrelated to the first. The trial on the initial charge against defendant was postponed to await trial of the other pending case, and then adjourned again with no reason given. During this period, defendant was convicted on the second charge. Trial on the first charge was then postponed again, until the appeal time on the conviction expired. Defendant appealed, however, and, once again, trial on the first breaking and entering charge was adjourned with no reason given. Trial was finally held, and defendant was convicted of the initial charge.

The Supreme Court ruled that defendant's conviction on the first charge was invalid, because his right to speedy trial had been violated by the frequent adjournments of his trial date. Concern-

ing the two adjournments for which no reason was given, the court cautioned that it would "view with great concern adjournments which are not supported by good cause shown on the record". 386 Mich 269, 274.

The trial court explicitly disapproved of the adjournment which was entered until the appeal time expired from the conviction on the second charge. Defendant had been notified that the remaining charge against him would be nol-prossed if he did not perfect an appeal from the other conviction. In discussing this practice, the Court stated that:

"An adjournment of one case with notice it would be dismissed if a defendant did not appeal a second case is not good cause for continuance. *Furthermore it is constitutionally obnoxious. Such action serves to chill the exercise of a defendant's constitutional right to appeal a criminal conviction and will not be tolerated."* (Emphasis supplied.) *Harrison, supra,* 386 Mich 269, 275.

In the instant case, we would be faced with a speedy trial issue, such as in *Harrison,* on the armed robbery charge if a conviction had resulted therefrom. The adjournment on November 10, 1970, of defendant Butler's trial on the armed robbery charge was ordered to await the expiration of the appeal period. When defendant did, in fact, appeal, his February 3, 1971, trial date was postponed to await the outcome of the challenge to his assault conviction. However, defendant was not tried thereafter for armed robbery. To the contrary, that charge was dismissed on double jeopardy grounds. To this extent this case is distinguished from *Harrison, supra.*

The case at hand, however, further raises the issue of the propriety of the prosecutor's action in conditioning the plea agreement on defendant's

waiver of his right to appeal. The prosecution had agreed to dismiss the two original charges outstanding against defendant in exchange for defendant's abandonment of his right to appeal his assault conviction on the added count.

Extensive examination of the case law has revealed little discussion of this specific practice, but the issue as to its propriety has been addressed by the New York courts.

In *People v Ramos,* 30 AD2d 848; 292 NYS2d 938 (1968), defendant pleaded guilty to second-degree murder, after he had been indicted for first-degree murder, first-degree robbery, first-degree grand larceny, and second-degree assault. It was stipulated that the robbery indictment would be dismissed provided that no appeal was taken from the murder conviction. Additionally, the trial court informed defendant at the plea-taking that the plea itself would not stand if defendant appealed. Commenting on the plea arrangement, the Court stated that:

"Under the circumstances, it could not have been reasonably contemplated that defendant would exercise his 'option' to appeal. In practical effect, the court virtually insulated the conviction and the sentence imposed thereon against appellate review. The court's actions were tantamount to a denial of defendant's right to appeal.

"The statutory right to appeal in criminal matters is 'an integral part of our judicial system' and 'it has been the consistent policy of our courts to preserve and promote that right as an effective, if imperfect, safeguard against impropriety or error.'" *Ramos, supra,* 30 AD2d 848, 849; 292 NYS2d 938, 940.

The issue was confronted again in *People v Irizarry,* 32 AD2d 967; 303 NYS2d 332 (1969), *aff'd* 27 NY2d 856; 317 NYS2d 15 (1970), where defend-

ant had pleaded guilty to attempted burglary, on the condition that a separate indictment charging him with sale of a narcotic and possession of a narcotic with intent to sell would be dismissed if he did not appeal the burglary conviction. The majority in *Irizarry* distinguished the situation from *Ramos, supra,* because the judge in the latter case had conditioned the very acceptance of the plea on defendant's waiver of his right to appeal the conviction. Affirming defendant's conviction in *Irizarry,* the majority noted that the consequence of defendant's appeal was not that the plea itself would be vacated, but that the prosecutor would refrain from obtaining dismissal of an outstanding indictment.

However, Justice James D. Hopkins, dissenting, believed that the *Ramos* holding applied to the situation in *Irizzary.* He pointed out that:

"Defendant was placed into the position of surrendering a review of a possibly onerous sentence and of any prejudicial defect in the proceedings leading to the sentence or standing trial on the other pending indictment.

*      *      *

"The point is that defendant should not have been compelled to give up the right to appellate review as a condition imposed by the prosecution and approved by the court before his plea would be accepted." *Irizarry, supra,* 32 AD2d 967, 968; 303 NYS2d 332, 333–334 (dissent by Hopkins, J.).

In *United States ex rel Amuso v LaVallee,* 291 F Supp 383 (ED NY, 1968), *aff'd* 427 F2d 328 (CA 2, 1970), the court denied a petition for a writ of habeas corpus after defendant's conviction on a plea of guilty to the charge of attempted unarmed robbery, after defendant had been indicted for attempted robbery, two counts of assault in the

first and second degrees, and attempted grand larceny in the first degree. Upon accepting defendant's plea, the trial court informed defendant that the other charges would be dismissed, in addition to charges pending in an unrelated indictment, on the condition that defendant did not appeal. In denying defendant's contentions that the plea had been involuntarily made and subject to invalid conditions, the court noted that:

"Conditioning charge concessions on a waiver of the right to appeal from the sentence on the guilty plea is one method of making a plea agreement enforceable." *Amuso, supra,* 291 F Supp 383, 385.

The court stated additionally that it did not feel defendant had surrendered a substantial right.

However, the United States Court of Appeals for the First Circuit took a different view of an analogous situation in *Worcester v Commissioner of Internal Revenue,* 370 F2d 713, 718 (CA 1, 1966). The trial court in *Worcester* agreed to suspend defendant's sentence, and place him on probation, if he agreed not to appeal. Disapproving of the practice, Chief Judge Aldrich, writing for the Court, said:

"The court was without right to bargain thus with the defendant, or to put a price on an appeal. A defendant's exercise of a right of appeal must be free and unfettered."

Faced with these sparse and conflicting statements on the issue, we are constrained to examine it in light of the plea-agreement process in the State of Michigan. The dismissal of other pending charges against defendant in exchange for a plea of guilty is, of course, one of the most common

forms of plea arrangements. Note, *Guilty Plea Bargaining: Compromise by Prosecutors to Secure Guilty Pleas,* 112 U Pa L Rev 865, 866 (1964). In the instant case, by the manner of its handling, the agreement contained both elements of charge dismissal and charge reduction. Such plea arrangements, of course, are accepted practice. *People v Eck,* 39 Mich App 176 (1972). However, it has long been a requirement in Michigan that plea agreements be freely, understandingly, and voluntarily made. GCR 1963, 785.3(2). To comply with this requirement, it is necessary that the trial court directly question defendant to establish the crime and defendant's participation therein. *People v Barrows,* 358 Mich 267 (1959).

The Supreme Court has recently reaffirmed the *Barrows* holding. The Court stated in *People v Taylor,* 387 Mich 209, 224 (1972), that the examination must show defendant's acts did constitute "a crime or otherwise he could not understandingly plead guilty. If what he did was actually not a crime, then if he pled guilty to it, it would not be an understanding plea". See, also, *People v Carlisle,* 387 Mich 269 (1972). Likewise, the proposed changes in GCR 1963, 785, drafted by the Supreme Court Guilty Plea Standards Committee, retain the requirement that the trial court ascertain a factual basis for a plea.[2] When accepting a guilty plea, the courts of this state, then, are required to probe deeper than the mere expression of willingness by the prosecutor and defendant to strike a

---

[2] Proposed rule 785.7(3) stated:

"Determining Factual Basis for Plea. The court shall not accept a guilty plea until it is satisfied that a crime was committed and, through personal interrogation of defendant, that defendant participated therein. If defendant's description of his actions would not substantially support a finding that defendant is in fact guilty of the charged offense or the offense to which he is pleading, the plea of guilty offered by the defendant shall be rejected by the court."

bargain.[3] They must look to the ultimate guilt or innocence of the pleaders.[4]

Given the posture which our courts have taken in order to insure that defendant is accorded due process when pleading guilty, the right to appeal from such a conviction is of substantial value. It is an absolute right founded on a provision of our state Constitution. Mich Const 1963, art 1, § 20. To permit the prosecution to induce defendant to waive his right to appeal in exchange for a plea agreement, we rule, is constitutionally impermissible.[5] It has a chilling effect on the right to appeal as did the practice disapproved in *Harrison, supra.*

If such bartering were to be permitted, the prosecution would indeed be able to insulate, in many cases, guilty pleas accepted in contravention of standards which have been developed with painstaking care to afford defendants their basic rights. To state that plea agreements are now an accepted practice in this state, then, is not to state

[3] For a further explication of the requirements necessary for the taking of a valid plea of guilty in this state, see *People v Rufus Williams,* 386 Mich 277 (1971); *People v Johnson,* 386 Mich 305 (1971); *People v Butler,* 387 Mich 1 (1972); and *People v Jaworski,* 387 Mich 21 (1972).

[4] Such an inquiry is not mandated by the United States Constitution. The United States Supreme Court held that it was permissible, under the Federal Constitution, for a state court to accept a guilty plea from a defendant who protested his innocence and stated that he was pleading guilty because he faced the possibility of the death sentence if he did not do so. *North Carolina v Alford,* 400 US 25; 91 S Ct 160; 27 L Ed 2d 162 (1970). It was there noted, however, that "the states may bar their courts from accepting guilty pleas from any defendants who assert their innocence". *Alford, supra,* note 11, 400 US 25, 38; 91 S Ct 160, 168; 27 L Ed 2d 162, 172.

[5] Under proposed GCR 785.11, as drafted by the Supreme Court Guilty Plea Standards Committee, "immediately upon sentencing, the court shall advise the defendant in open court that he is entitled as a matter of constitutional right to appellate review of his conviction". Were we to reach a contrary result in this case, the trial court would be placed in the untenable position of advising defendant of his constitutional right to appeal after having accepted a guilty plea conditioned upon defendant's waiver of that right.

that there are no limits to the conditions imposed thereon.

We are, of course, aware of the anomaly inherent in the instant situation. Defendant Butler did appeal his assault conviction, despite the conditions of the plea agreement. In fact, we here address the propriety of his conviction for a second time in this Court. Moreover, we are not unmindful of the disposition made by the New York Court in *Ramos, supra.* Defendant in that case had failed to bring a timely appeal. The Court there remanded his case to the trial court for resentencing, in order that defendant could then prosecute a timely appeal. However, our concern here with the chilling effect of the practice of conditioning defendant's plea agreement on a waiver of his right to appeal, is not with defendants who perfect timely appeals, or those who seek leave to file delayed appeals, but with those defendants who are deterred from bringing irregularities in their convictions to the attention of this state's appellate courts by the price set on their right to appeal.[6]

The Court in *Amuso, supra,* was persuaded to condone the practice here encountered, because it furnished a means of rendering plea agreements enforceable. While we recognize the validity of that argument, it does not carry sufficient weight to vitiate a constitutional guarantee. Furthermore, we note that an adjournment of a pending case to await the expiration of the appeal period would most probably abridge defendant's right to speedy trial, as set forth in *Harrison, supra.*

[6] For a discussion of the chilling effect on defendant's right to appeal of meting out greater punishment on retrial after defendant has succeeded in overturning his original conviction, see *North Carolina v Pearce,* 395 US 711, 724; 89 S Ct 2072, 2080; 23 L Ed 2d 656, 668–669 (1969).

The remedy which we here adopt, then, to cure this chilling effect, is to vacate the plea conviction whenever it is based on a stipulation that defendant must waive his right to appeal in order to receive all or part of the consideration offered in exchange for his plea. Only in this manner can we protect defendant's right to appeal.

We briefly address ourselves to two other issues. The trial court, before accepting the instant guilty plea, failed to notify defendant that he waived his right to confront his accusers and his privilege against compulsory self-incrimination. Defendant must be informed of these two rights, in addition to his right to a trial by jury, if he is to understandingly waive those rights. *People v Jaworski,* 387 Mich 21 (1972). The failure of the trial court to notify defendant of those two rights constituted reversible error.

Finally, we turn to an issue not raised on appeal but apparent on the face of the record before us. Defendant's attorney filed a petition for diagnostic commitment to determine his client's competency to stand trial in July, 1970. In response thereto, the trial court ordered a preliminary psychiatric examination. Defendant's petition for diagnostic commitment was denied on the basis of the preliminary psychiatric examination.

However, GCR 1963, 786.3 declares that, when a defendant moves to be committed to the department of Mental Health, "the court *shall* order the defendant committed to a diagnostic facility certified by the department of Mental Health for the performance of forensic psychiatric evaluation". (Emphasis supplied.) The procedure detailed in the court rule is mandatory. *People v Howard,* 37 Mich App 662 (1972). It "must be followed when the question of defendant's competency to stand

trial is properly raised". *People v Kerridge,* 20 Mich App 184, 191 (1969). See, also, *People v Ledbetter,* 31 Mich App 160 (1971).

In the present case, the trial court ordered a preliminary psychiatric examination to determine whether defendant *should be* committed to a diagnostic facility. This deviation from the express terms of the court rule was error. Therefore, if defendant upon remand renews his motion to be committed to the department of Mental Health, the trial court is directed to commit him to a center for forensic psychiatric examination in accordance with GCR 1963, 786.3.

Reversed and remanded.

All concurred.