PEOPLE v AMERICAN MEDICAL CENTERS OF MICHIGAN,
LIMITED

Docket Nos. 55368, 56058, 56349. Submitted April 21, 1982, at Lansing.—Decided July 19, 1982. Leave to appeal applied for.

American Medical Centers of Michigan, Limited, Eugene Kraus, Leo Fuentes, M.D., and Anton Zadurowycz, M.D., were convicted of Medicaid fraud, Ingham Circuit Court, Jack W. Warren, J. Kraus was president of American, which operated two clinics, each of which was supervised by one of the physician defendants. It was found that the clinics had submitted numerous claims to the Department of Social Services for the performance of direct laryngoscopies which, in fact, were not performed. The defendants were ordered to pay restitution and the individual defendants were placed on five years probation with

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law § 424.
[3, 12] 79 Am Jur 2d, Welfare Laws § 38.
[4] 75 Am Jur 2d, Trial §§ 17, 21.
   Antagonistic defenses as ground for separate trials of codefendants in criminal case. 82 ALR3d 245.
[5] 47 Am Jur 2d, Jury § 255.
   Peremptory challenge after acceptance of juror. 3 ALR2d 499.
[6] 47 Am Jur 2d, Jury § 254.
[7] 5 Am Jur 2d, Appeal and Error § 886.
[8] 19 Am Jur 2d, Corporations §§ 1384-1387.
[9] 75 Am Jur 2d, Trial § 713.
[10] 5 Am Jur 2d, Appeal and Review § 893.
[11, 12] 21 Am Jur 2d, Criminal Law § 130.
[13] 21 Am Jur 2d, Criminal Law §§ 130, 136.
[14] 75 Am Jur 2d, Trial § 673.
[15] 19 Am Jur 2d, Corporations § 1263 et seq.
[16] 75 Am Jur 2d, Trial §§ 206, 273.
[17] 5 Am Jur 2d, Appeal and Error §§ 772, 774.
   76 Am Jur 2d, Trial § 1080.
[18] 5 Am Jur 2d, Appeal and Review § 784.
[19, 20] 21 Am Jur 2d, Criminal Law § 572.
   Ability to pay as necessary consideration in conditioning probation or suspended sentence upon separation or restitution. 73 ALR3d 1240.

the last six months to be spent in county jail. Defendants appealed, alleging several errors. *Held:*

1. Sufficient evidence on each of the elements of the offense was presented at the preliminary examination of defendant Fuentes. The magistrate did not abuse his discretion in binding Fuentes over for trial.

2. The trial court did not err when it denied defendant Zadurowycz's motion for severance. The affidavit accompanying the motion failed to state how the defenses of the other defendants were antagonistic to that of Zadurowycz, and he has failed to demonstrate that his substantial rights were prejudiced by a joint trial.

3. The method adopted by the parties for rotation of peremptory challenges of prospective jurors did not violate the court rule governing peremptory challenges. Furthermore, the objection to the procedure raised by defendant Zadurowycz was untimely, coming on the third day of jury selection.

4. All the defendants moved for directed verdicts at the close of the prosecution's proofs. Reviewing the evidence presented to that time in a light most favorable to the prosecution, a reasonable trier of fact could have found that the defendants were guilty beyond a reasonable doubt. The trial court properly denied the motions for directed verdicts.

5. The trial court's jury instructions on intent were proper. The instructions prevented the jury from convicting defendants for a "simple mistake", and adequately instructed the jury on the specific intent necessary for a conviction of Medicaid fraud.

6. An instruction that knowledge meant not only actual knowledge but also constructive knowledge was proper.

7. An instruction that corporate knowledge depended on the combined knowledge of the employees and agents of American was not erroneous in the context of this case.

8. The admission of certain statements of the prosecutor during opening and closing arguments was harmless error and did not deny the defendants a fair trial. Other alleged errors committed by the prosecutor were cured by objections and proper curative instructions.

9. The trial court improperly extracted promises from the defendants that they would not appeal from any alleged error in sentencing.

10. Restitution may properly be ordered as a condition of probation. Defendant Fuentes alleged that the record does not support the amount of restitution he was ordered to pay. Although the trial court's findings are not as explicit as they

could have been, they were sufficient to support the restitution ordered.

Affirmed.

1. CRIMINAL LAW — PRELIMINARY EXAMINATION.

An examining magistrate is to bind a defendant over for trial if it appears that a crime has been committed and that there is probable cause to believe that the defendant committed it (MCL 776.13; MSA 28.931).

2. CRIMINAL LAW — PROBABLE CAUSE.

Probable cause for the purpose of a criminal preliminary examination is defined as a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that a person accused is guilty of the offense with which he is charged.

3. CRIMINAL LAW — SOCIAL SERVICES — MEDICAID FRAUD.

The elements of the offense of Medicaid fraud are made out where a person makes, presents, or causes to be presented to an employee or officer of the state a claim under the Social Welfare Act, knowing the claim to be false, fictitious, or fraudulent (MCL 400.607; MSA 16.614[7]).

4. CRIMINAL LAW — SEVERANCE — ANTAGONISTIC DEFENSES.

A defendant does not have an absolute right to a separate trial; where moving for severance a defendant must clearly, affirmatively, and fully show that his substantial rights will be prejudiced by a joint trial; severance should be granted where the separate defenses of the defendants are antagonistic.

5. TRIAL — JURY SELECTION — TIMELY OBJECTION.

An objection to the jury selection method employed at a trial was not timely where the method used for peremptory challenges was agreed upon by the parties and the objection was not made until the third day of jury selection.

6. TRIAL — JURY SELECTION — PEREMPTORY CHALLENGES — COURT RULES.

A method of allowing peremptory challenges in a trial of joint defendants by which the challenges were rotated from the prosecution then to each defendant in turn before returning to the prosecution did not violate the court rule regarding peremptory challenges (GCR 1963, 511.5).

7. APPEAL — DIRECTED VERDICT — EVIDENCE — CRIMINAL LAW.

The Court of Appeals, when reviewing a trial court's ruling on a

motion for a directed verdict or when determining whether sufficient evidence to convict a defendant was presented, must consider the evidence presented up to the time the motion was made, view that evidence in a light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

8. CORPORATIONS — CORPORATE OFFICERS — FRAUDULENT CONDUCT.

A corporation is liable for the fraudulent conduct of its president and other agents undertaken within the scope of their authority.

9. CRIMINAL LAW — JURY INSTRUCTIONS.

Instructions to the jury in a criminal case must include all the elements of the crime charged and must not exclude material issues, defenses, or theories if there is evidence to support them.

10. CRIMINAL LAW — JURY INSTRUCTIONS.

Jury instructions must be reviewed in their entirety; criminal jury instructions which include a reading of the information and the applicable statutes will generally be found to be sufficiently comprehensive.

11. CRIMINAL LAW — SPECIFIC INTENT.

A crime is a specific intent crime where the statute describing the crime requires that the criminal act be committed either "purposefully" or "knowingly".

12. CRIMINAL LAW — MEDICAID FRAUD — SPECIFIC INTENT.

Medicaid fraud is a specific intent crime (MCL 400.607; MSA 16.614[7]).

13. CRIMINAL LAW — KNOWLEDGE — CONSTRUCTIVE KNOWLEDGE.

Intent and knowledge may be inferred from one's actions and, where knowledge is an element of an offense, it includes both actual and constructive knowledge.

14. CRIMINAL LAW — JURY INSTRUCTIONS — FAILURE TO OBJECT.

Failure to object to a jury instruction prior to the jury's retiring to consider its verdict waives appellate review of the instruction absent manifest injustice.

15. CORPORATIONS — FRAUDULENT CONDUCT — KNOWLEDGE OF EMPLOYEES.

The combined knowledge of the employees and agents of a

corporation may be imputed to the corporation to find it liable for fraudulent acts.

16. CRIMINAL LAW — PROSECUTOR'S CONDUCT — APPEAL TO JURORS' POCKETBOOK.

A prosecutor's appeal to the jurors' pocketbook, while improper, is harmless where it occurs in opening argument, is isolated in character, and may be cured by proper instructions to the jury.

17. CRIMINAL LAW — MISTRIAL — APPEAL.

The declaration of a mistrial rests in the sound discretion of the trial judge and a denial of a motion for a mistrial will not be reversed on appeal absent an affirmative showing of prejudice to the rights of the defendant.

18. CRIMINAL LAW — SENTENCING — APPEAL.

A trial court may not require that a defendant waive his right to appeal sentencing errors in exchange for a particular sentence; such agreements would effectively insulate the decisions of trial courts from appellate review.

19. CRIMINAL LAW — PROBATION — RESTITUTION.

A defendant may be required to pay restitution as a condition of probation in a welfare fraud case; the amount and manner of payment is a matter for the judgment of the sentencing judge.

20. CRIMINAL LAW — PROBATION — RESTITUTION.

Restitution as a condition of probation may be upheld where the record discloses the purpose of the payment, the manner in which the amount of restitution was determined, and support for the sentencing judge's conclusion that the losses for which restitution was ordered were caused by the criminal conduct of the defendant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Edwin M. Bladen, J. Ronald Kaplansky* and *Donald E. Erickson,* Assistants Attorney General, for the people.

*Dean, Dean, Segar, Hart & Shulman, P.C.,* for defendants American Medical Centers of Michigan, Limited, and Eugene Kraus.

*Carl Siemba,* for defendant Fuentes.

*James Leonard Elsman* and *Patricia A. Streeter,* for defendant Zadurowycz.

Before: M. J. KELLY, P.J., and CYNAR and G. R. COOK,* JJ.

M. J. KELLY, P.J. Defendants-appellants were convicted by a jury of numerous counts of Medicaid fraud, MCL 400.607; MSA 16.614(7). Defendants Leo Fuentes, Anton Zadurowycz and Eugene Kraus were sentenced to five years probation with the last six months to be spent in the county jail. Additionally, they were ordered to pay restitution in the amounts of $40,000, $60,000, and $200,000, respectively. Defendant American Medical Centers of Michigan, Limited (American), was ordered to pay restitution of $44,000. Defendants appeal as of right, GCR 1963, 806.1.

American operated two clinics, the Pasadena Street Clinic and the American Medical Center Clinic, in Flint, Michigan. Mr. Kraus, who is not a physician, was president of the corporation. Dr. Zadurowycz supervised the operation of the American Medical Center Clinic while Dr. Leo Fuentes and his wife, Dr. Felma Fuentes, supervised the Pasadena Street Clinic.

Dr. Zadurowycz and Drs. Fuentes provided services for Medicaid patients. To receive compensation for these services, American would submit claim forms furnished by the Department of Social Services (DSS). The forms, which were processed by computers, used code numbers to identify patients, diagnoses, and treatments. DSS provided a manual containing code numbers for different services including "Laryngoscopy, direct, diagnostic"

---

* Circuit judge, sitting on the Court of Appeals by assignment.

which was listed under the respiratory subsection of surgery.

During 1978 and 1979, the Attorney General conducted an investigation of defendants after receiving a complaint alleging Medicaid fraud. This investigation resulted in a 35-count complaint and warrant in Ingham County Circuit Court against the defendants. The complaint alleged that the defendants had submitted claims for direct diagnostic laryngoscopies which were never performed. Prior to the preliminary examination, defendants moved to change venue to Genesee County, but their motion was denied. Also, defendant Felma Fuentes had been confined to bed and had not been arraigned so the proceedings continued without her. Hereinafter references to defendant Fuentes shall apply to defendant Leo Fuentes only.

A preliminary examination was commenced on November 20, 1979. During the examination, the Attorney General produced evidence showing that the procedures for a *direct* laryngoscopy were different than those used for an *indirect* laryngoscopy. A laryngoscopy is the visual examination of the exterior and interior of the larynx. In an indirect laryngoscopy, an instrument containing a mirror is inserted into the patient's mouth and angled to reflect down the patient's throat. A light is then reflected off the mirror and an image of the focal cords is reflected back to the mirror. A direct laryngoscopy, on the other hand, uses an instrument known as a laryngoscope which is inserted down the patient's throat while he is under anesthesia and in a supine position. The laryngoscope allows the doctor to get a direct view of the larynx. Medicaid would reimburse a doctor an additional $67 for a direct laryngoscopy while no

provision was made for any additional reimbursement for an indirect laryngoscopy. Evidence was also presented demonstrating that between January 1, 1978, and June 6, 1979, 5,135 of the 7,941 direct laryngoscopies performed for Medicaid patients in this state were done at American's clinics. The Attorney General also produced evidence that patients at American clinics were not given direct laryngoscopies but that American nevertheless submitted claims for direct laryngoscopies for those patients. On March 24, 1980, the examining magistrate bound defendants over for trial.

Prior to trial, all defendants moved for separate trials and defendants Fuentes and Zadurowycz moved *in limine* to prevent the prosecution from introducing at trial evidence of statewide claims for laryngoscopies as compared to claims made by American. The defendants also moved to quash the information. Initially, the trial court granted severance but, on reconsideration, it ordered a joint trial of all defendants. The court further denied defendants' requests to quash the information and denied the motion *in limine.*

The trial began on October 27, 1980, and the prosecutor presented evidence similar to that presented during the preliminary examination. However, the trial court did not allow the prosecution to introduce evidence comparing claims for laryngoscopy by American clinics as opposed to those made statewide. After the prosecution's case in chief, all defendants moved for directed verdicts which were denied by the trial court. The defendants rested without presenting any evidence and the jury was instructed. The jury returned a verdict finding defendants Zadurowycz, Kraus, and American guilty as charged and defendant Fuentes guilty of four of the eight counts charged against him.

The trial court sentenced the individual defendants to five years probation with the last six months to be spent in the county jail. All defendants were ordered to pay restitution. Defendants appeal raising a number of issues.

## I

Defendant Leo Fuentes argues that the examining magistrate erred when he found probable cause to bind him over. The standard for reviewing an examining magistrate's decision to bind over a defendant was recently stated in *People v Goode,* 106 Mich App 129, 136; 308 NW2d 448 (1981), where the Court wrote:

"An examining magistrate is to bind a defendant over for trial if it appears that a crime has been committed and that there is probable cause to believe that the defendant committed it. MCL 766.13; MSA 28.931, *People v Asta,* 337 Mich 590, 609-610; 60 NW2d 472 (1953). While positive proof of guilt is not required, there must be evidence on each element of the crime charged or evidence from which those elements may be inferred. *People v Oster,* 67 Mich App 490, 495; 241 NW2d 260 (1976), *lv den* 397 Mich 848 (1976). Probable cause is defined as a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that a person accused is guilty of the offense with which he is charged. *People v Dellabonda,* 265 Mich 486, 490; 251 NW 594 (1933). A magistrate's determination at the preliminary examination should not be disturbed unless a clear abuse of discretion is demonstrated. *People v Doss,* 406 Mich 90, 101; 276 NW2d 9 (1979)."

Fuentes was charged with eight counts of Medicaid fraud. MCL 400.607; MSA 16.614(7) reads in pertinent part as follows:

"(1) A person shall not make or present or cause to be made or presented to an employee or officer of the state a claim under Act No. 280 of the Public Acts of 1939 [MCL 400.1 *et seq.;* MSA 16.401 *et seq.],* as amended, upon or against the state, knowing the claim to be false, fictitious, or fraudulent."

The elements of the offense under MCL 400.607; MSA 16.614(7) are: 1) a person makes, presents, or causes to be made or presented, 2) to an employee or officer of the state, 3) a claim under the Social Welfare Act, MCL 400.1 *et seq.;* MSA 16.401 *et seq.,* and 4) knowing the claim to be false, fictitious, or fraudulent.

During the preliminary examination, evidence was presented that Fuentes, along with his wife, supervised the operation of the Pasadena Street Clinic. His provider number on the billing form had been used to bill Medicaid for direct laryngoscopies. The patients' charts for those billings also contained a notation that laryngoscopies had been performed upon those patients. The prosecution also presented evidence that the patients were not given direct laryngoscopies but rather indirect laryngoscopies. Finally, the evidence showed that the average physician would know the difference between a direct and an indirect laryngoscopy. After reviewing the evidence presented during the preliminary examination, we cannot say that the examining magistrate abused his discretion when he bound over defendant Leo Fuentes.

## II

Defendant Anton Zadurowycz argues that the trial court erred when it denied his motion for a severance of trial. According to Zadurowycz, he intended to present a defense which was antago-

nistic to the other defendants. He also argues that the joint trial restricted his right to cross-examine prosecution witnesses because of the different defenses presented by the defendants.

Defendants do not have an absolute right to separate trials; rather there is a strong policy favoring joint trials. *People v Carroll,* 396 Mich 408, 414; 240 NW2d 722 (1976). When moving for severance, the defendant must clearly, affirmatively, and fully show that his "substantial rights" will be prejudiced by joint trial. *Id.,* 414, *People v Kramer,* 103 Mich App 747, 753; 303 NW2d 880 (1981). Where defendants' separate defenses are antagonistic, severance should be granted. *People v Hurst,* 396 Mich 1, 6; 238 NW2d 6 (1976), *Kramer, supra,* 753. A conclusory statement of antagonistic defenses must be supported by an affidavit defining the inconsistencies between the defenses. *People v Kramer,* 108 Mich App 240, 256; 310 NW2d 347 (1981). Where a defendant fails to show prejudice to his substantial rights, the competing interest of benefit to the courts, the public, and the administration of justice from joinder comes into play. *People v Clark,* 85 Mich App 96, 101; 270 NW2d 717 (1978). Finally, we will not reverse a trial court's decision concerning joint trials unless there has been an abuse of discretion by the trial court. MCL 768.5; MSA 28.1028, *Carroll, supra,* 414.

In this case, Zadurowycz submitted an affidavit in support of his motion for severance. The affidavit states that Zadurowycz was never involved in the billing procedure. However, the affidavit fails to state how the other defendants' defenses are antagonistic to his defense. In fact, Zadurowycz's affidavit fails to support the allegation that the

defenses are antagonistic. Furthermore, defendant's claim that Kraus and American were the guilty parties is not an antagonistic or inconsistent defense but merely a different one. *Carroll, supra,* 414. Defendant has failed to demonstrate that his substantial rights were prejudiced by a joint trial and we cannot say that the trial court abused its discretion when it refused to grant defendant's motion for severance.

## III

Defendant Zadurowycz also alleges that the trial court erred when it established a peremptory challenge rotation procedure for jury selection which differed from GCR 1963, 511.5. Prior to trial, the parties agreed to a peremptory challenge rotation which went from the prosecution to defendant Zadurowycz, to defendant Fuentes, to defendant Kraus, then to defendant American before returning to the prosecutor. On the third day of jury selection, after Zadurowycz and Fuentes had used their last peremptory challenge, Fuentes objected to the procedure. Zadurowycz joined in the objection. Defendants argued that the rotation should have gone from the prosecutor to one of the defendants and then back to the prosecutor before going to another defendant. At the time of defendants' motions, the prosecutor had 13 challenges left. The trial court denied defendants' motions.

Initially we note that Zadurowycz did not make a timely objection to the jury selection method. The method used for peremptory challenges was agreed upon by the parties and no objection was made until the third day of jury selection. This was not a timely objection. See *People v Miller,* 411 Mich 321, 326; 307 NW2d 335 (1981).

Furthermore, the procedure used did not violate GCR 1963, 511.5. The rule reads in part:

"Peremptory challenges. After all challenges for cause are completed, the parties shall make or waive their peremptory challenges. First the plaintiff and then the defendant may exercise 1 or more peremptory challenges alternately until each party successively waives further peremptory challenges or all such challenges have been exercised."

In *People v Finney,* 113 Mich App 638; 318 NW2d 519 (1982), this Court found that a similar peremptory challenge order did not violate GCR 1963, 511.5. In *Finney,* the prosecutor exercised his peremptory challenge followed by defendant #1, defendant #2, and defendant #3 before the prosecution would again be required to use a challenge. Thereafter, the order rotated by round: defendant #1, defendant #2, defendant #3, and the prosecutor; defendant #2, defendant #3, the prosecutor, defendant #1, etc. On appeal, Finney made a claim identical to defendant's. This Court rejected Finney's argument, stating:

"Defendant has no grounds for complaint. If he chooses to exercise all of his peremptory challenges before the prosecutor has exercised his, he takes the chance that the prosecutor will subsequently exercise the remaining peremptory challenges in a manner unsatisfactory to defendant. See *People v Mullane,* 256 Mich 54, 57; 239 NW 282 (1931).

"GCR 1963, 511.5 affords to the prosecutor 15 peremptory challenges under the circumstances of this case. The court rule does not require that the prosecutor exercise his peremptory challenges in the manner suggested by defendant. Cases cited by defendant do not apply as they do not involve multiple defendants: *People v Thomas,* 25 Mich App 213; 181 NW2d 328 (1970), *People v Parham,* 28 Mich App 267; 184 NW2d 273

(1970). In those cases the defendants were required to exercise all their peremptory challenges before the prosecution was required to exercise any. In the case at bar, the trial judge required all parties to take turns and no one was required to exercise any peremptory challenges at any time. Defendant could have saved all of his peremptory challenges until everyone else had exercised all of theirs." *Id.,* 641.

Because Zadurowycz failed to make a timely objection and because the procedure used did not violate GCR 1963, 511.5, we find no error.

## IV

At the close of the prosecution's proofs, all the defendants moved for directed verdicts. The trial court denied the motions. After the jury returned a guilty verdict against each defendant, Fuentes moved for judgment notwithstanding the verdict, or, in the alternative, a new trial. This motion was also denied. The defendants appeal, claiming the trial court erred when it refused to direct a verdict in their favor. Fuentes also argues that insufficient evidence was presented at trial to convict him of Medicaid fraud.

When reviewing a trial court's ruling on a motion for a directed verdict, we must consider the evidence presented by the prosecution up to the time the motion is made, view that evidence in a light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), *cert den* 449 US 885 (1980). This same standard applies when determining whether sufficient evidence to convict a defendant has been

presented. *People v Delongchamps,* 103 Mich App 151, 159; 302 NW2d 626 (1981), *lv den* 412 Mich 857 (1981).

As discussed previously, the elements of the offense under MCL 400.607; MSA 16.614(7) are: 1) a person makes, presents, or causes to be made or presented, 2) to an employee or officer of the state, 3) a claim under the Social Welfare Act, and 4) knowing the claim to be false, fictitious, or fraudulent.

Initially, defendant Zadurowycz argues that the trial court erroneously applied the "any evidence" standard which was disapproved of in *Hampton, supra.* When ruling on defendant's motion for a directed verdict, the trial judge stated the "any evidence test". It then stated the proper test as established by *Hampton.* The prosecutor informed the trial court that *Hampton* applied and the trial court acknowledged that this was the standard it used in ruling on defendant's motion. Therefore, defendant's claim lacks merit.

At the time defendants Fuentes and Zadurowycz made their motions for directed verdicts, the prosecution had presented evidence that they were the supervising physicians at the Pasadena Street and American Medical Center Clinics. Their initials were on patients' charts which meant that they had reviewed the information contained in the chart. Each chart indicated that a "laryngoscopy" had been performed, but the patients testified that their examinations did not include a laryngoscopy. The evidence also demonstrated that if a laryngoscopy was performed, it was an indirect laryngoscopy which was not a billable procedure under the Medicaid code. Furthermore, the evidence showed

that a doctor would know the difference between a direct and indirect laryngoscopy and that direct laryngoscopies were not performed in an office or clinic but in a hospital. The prosecutor also presented evidence that claims for direct laryngoscopies containing Fuentes' and Zadurowycz's provider numbers were submitted to the DSS. While their signatures were affixed to the claim forms by the corporation billing clerk, the policy manual allows the authorized representative of the provider to sign the claim forms. However, the provider remains responsible for the accuracy of the information.

After reviewing the evidence presented by the prosecutor, we find that a reasonable trier of fact could have found beyond a reasonable doubt that defendants were guilty. The trial court did not err when it denied defendants' motions for directed verdicts and there was sufficient evidence to convict defendant Fuentes.

Defendants Kraus and American also argue that the trial court erred when it denied their motions for directed verdicts. The evidence presented against the other defendants was also applicable to these defendants. While patients' charts indicated that laryngoscopies had been performed, the patients testified that these examinations had not been given. The evidence established that Kraus was responsible for billing and informed the billing clerk which procedures to bill for and the amount to bill. Defendant Kraus received the Medicaid payments from the state at a post office box over which he had control. Kraus was the person who instructed the billing clerk to bill for direct laryngoscopies and informed her that it was a procedure which would be done to each patient.

He also suggested to a number of physician's assistants at the two clinics that more laryngoscopies be performed and provided them with a larynx vue, which could not be used to perform a direct laryngoscopy. Finally, Kraus instructed the billing clerk to dispose of the billing forms which she had at her house when the police executed a search warrant on the corporation.

A rational trier of fact could have found beyond a reasonable doubt that Kraus had committed the offense. Since defendant American is liable for the fraudulent conduct of its president and other agents, undertaken within the scope of their authority, the trial court properly denied both Kraus's and American's motions for a directed verdict. *Attorney General ex rel James v National Cash Register Co,* 182 Mich 99, 111-112; 148 NW 420 (1914).

## V

The defendants raise a number of objections to the jury instructions given by the trial court. A defendant has a right to have a properly instructed jury pass upon the evidence. *People v Lewis,* 91 Mich App 542, 544-545; 283 NW2d 790 (1979). The instructions to the jury must include all the elements of the crime charged and must not exclude material issues, defenses, or theories if there is evidence to support them. *People v Allensworth,* 401 Mich 67, 70; 257 NW2d 81 (1977), *cert den* 435 US 933 (1978), *People v Reed,* 393 Mich 342, 349-350; 224 NW2d 867 (1975), *cert den* 422 US 1044, 1048 (1975). When reviewing jury instructions, they must be reviewed in their entirety. *People v Ritsema,* 105 Mich App 602, 609; 307 NW2d 380 (1981). Where the instructions include a

reading of the information and the applicable statutes, they will generally be found to be sufficiently comprehensive. *People v McGhee,* 67 Mich App 12, 16; 239 NW2d 741 (1976), *lv den* 396 Mich 861 (1976), *People v Browning,* 106 Mich App 516, 528; 308 NW2d 264 (1981).

While discussing the proposed instructions, all the defendants objected to the prosecution's proposed intent instruction. Fuentes requested that the jury be given an instruction on specific intent, CJI 3:1:16, while the other defendants requested that the jury be read the definition of "knowing" as contained in MCL 400.602(c); MSA 16.614(2)(c). The trial court refused to give an instruction on specific intent but did read the jury the statutory definition of "knowing".

On appeal, defendant Zadurowycz argues that the trial court should have given the jury an instruction which included the statutory definition of "false statement" and "false representation" as contained in MCL 400.602(b); MSA 16.614(2)(b). However, defendants were charged under MCL 400.607; MSA 16.614(7) which does not necessarily require proof that a defendant made a false statement or false representation. It requires that a defendant make a claim which is false, fictitious, or fraudulent. Therefore, the trial court did not err when it did not give the requested statutory definition.

Nor are we convinced after reading the instructions in their entirety that the instructions allowed the jury to convict defendant for a "simple mistake". The trial judge stated that "an act is not done knowingly if it is done by mistake". His remaining instruction regarding knowledge pre-

vented the jury from convicting defendants for merely making a mistake.

Defendant Fuentes argues that crimes of Medicaid fraud under MCL 400.607; MSA 16.614(7) contain an element of specific intent. He claims that the trial court erred when it refused to give an instruction on specific intent. Specific intent is a nebulous concept but has been defined as the subjective desire or knowledge that the prohibited result will occur. *People v Spry,* 74 Mich App 584, 596; 254 NW2d 782 (1977), *lv den* 401 Mich 825 (1977). To determine if a criminal statute requires specific intent, we look to the mental state set forth in the statute. *People v Lerma,* 66 Mich App 566, 569; 239 NW2d 424 (1976), *lv den* 396 Mich 848 (1976). Where a statute requires that the criminal act be committed either "purposefully" or "knowingly" then the crime is a specific intent crime. *Id.,* 569.

In this case, MCL 400.607; MSA 16.614(7) contains a requirement that defendant knowingly submit a false, fictitious, or fraudulent claim. Since it requires a mental state of "knowingly", it is a specific intent crime. However, we do not find that the trial court's refusal to instruct the jury on specific intent requires the reversal of Fuentes' conviction. The trial court explained to the jury that the prosecution had to show that defendant Fuentes knowingly submitted a false claim. It also read the jury the statutory definition of "knowingly" which required the jury to find that defendant Fuentes was aware of his conduct and that his conduct was substantially certain to cause the intended result. When read as a whole, the jury instructions adequately informed the jury of the

intent necessary to convict defendant Fuentes. Consequently, no reversible error occurred.

All the defendants objected to the prosecution's proposed instruction regarding constructive knowledge. When giving the jury instructions, the trial court stated that knowledge meant not only actual knowledge but also constructive knowledge. The judge went on to explain that mere mistake was not enough and read the jury the statutory definition of knowledge. On appeal, defendants argue that the judge erred when he instructed the jury that constructive knowledge was sufficient to convict defendants.

Intent and knowledge can be inferred from one's actions and, when knowledge is an element of an offense, it includes both actual and constructive knowledge. *People v Tantenella,* 212 Mich 614, 621; 180 NW 474 (1920), *People v Starks,* 107 Mich App 377, 385; 309 NW2d 556 (1981). The trial court did not err when it instructed the jury concerning the knowledge required before defendants could be found guilty.

Defendant Fuentes also argues that the trial court's instruction concerning the requirement that defendant "caused" a fraudulent claim to be made was erroneous. Defendant Fuentes failed to object to this instruction and has waived appellate review absent manifest injustice. *People v Hogan,* 105 Mich App 473, 484-485; 307 NW2d 72 (1981). A review of the instruction given by the trial court convinces us that no injustice occurred.

We reject for the same reason defendant Zadurowycz's claim of error as to the court's instruction concerning venue and the reading of the parties'

stipulation on venue. After the court finished instructing the jury, defendant Zadurowycz failed to object to these instructions. Subsequently, after the jury began its deliberations, he objected to the instruction. Failure to object to an instruction prior to a jury's retiring to consider its verdict waives appellate review of the instruction. *People v Smith,* 80 Mich App 106, 113; 263 NW2d 306 (1977), *lv den* 406 Mich 920 (1979). In any event the proper venue for an action brought in connection with Medicaid fraud is the Ingham County Circuit Court. MCL 400.611; MSA 16.614(11). Therefore, the jury was properly instructed even had defendant's objection been timely.

The final challenge to the jury instruction involves the trial court's instruction on corporate liability. The trial judge instructed the jury that a corporation is criminally liable for the acts of its agents and employees undertaken within the scope of their employment. He further instructed the jury that corporate knowledge depended upon the combined knowledge of its employees and agents. On appeal, defendant American argues that the instruction on combined knowledge was erroneous since a corporation can only be liable for acts performed by its board, officers, or supervisors.

"Person", as defined by MCL 400.602(e); MSA 16.614(2)(e), includes a corporation. It is well settled that a corporation is liable for the fraudulent conduct of its president where the conduct was within the scope of his authority. *National Cash Register, supra,* 111-112. Some courts have recognized that a corporation is considered to have acquired the collective knowledge of its employees. *United States v TIME-DC, Inc,* 381 F Supp 730, 738 (WD Va, 1974).

In this case, we cannot say that the jury instructions were erroneous. The only way a corporation can act is through its employees and agents. The combined knowledge of those employees may be imputed to the corporation to find it liable for fraudulent acts. Furthermore, even applying the test urged by defendant American, it would be liable for the conduct of Kraus, American's president, under whose authority the fraudulent billings issued, and his knowledge would have made American liable for the acts.

After a review of the jury instructions as a whole, we cannot say that the trial court erred when it instructed the jury.

## VI

Defendants Kraus and American argue that certain conduct by the prosecution during trial acted to deny them a fair trial. Initially, they argue that the prosecutor appealed to the jurors' pocketbook during opening argument when he stated that Medicaid was funded by his and the jurors' tax money. While this type of argument was improper, the error was harmless where it occurred in opening argument, was isolated in character, and could have been cured by instructions. *People v Lemanski,* 87 Mich App 88, 90; 273 NW2d 598 (1978).

Defendants also object to statements made by the prosecutor during closing arguments. The prosecutor's closing argument contained a statement that Leo Fuentes' signature appeared as the treating physician on some patients' charts while his wife's provider number appeared on the Medicaid claim for those patients' treatment. He argued

that this in itself was a false claim. Defendants' attorney moved for a mistrial arguing that the comments were outside the scope of the information. The trial court denied defendants' motion but did read a curative instruction to the jury and later repeated it during the jury instructions. The declaration of a mistrial rests in the sound discretion of the trial judge and, absent an affirmative showing of prejudice to the rights of a defendant, a denial of the motion will not be reversed. *People v Kramer,* 103 Mich App 747, 757; 303 NW2d 880 (1981). In this case, defendants' rights were not prejudiced since the trial court twice instructed the jury that it was not to consider a claim to be fraudulently submitted just because the treating physician's provider number did not appear on the claim form.

Defendants also argue that the prosecution's theory of the case erroneously summarized the testimony of the billing clerk. During her testimony, the billing clerk stated that Kraus told her to "dispose" of the billing records she had at home. In the prosecutor's theory of the case, the testimony was summarized as Kraus ordering the clerk to "destroy" the records. Kraus objected and moved for a mistrial. After review of the testimony, it was discovered that Kraus used the word "dispose" rather than "destroy", and the trial court gave the jury a curative instruction informing them that Kraus used the term dispose, not destroy. Again defendant Kraus has failed to demonstrate that his rights were prejudiced where the trial court gave a proper curative instruction. Therefore the denial of his motion for mistrial was not error.

Finally, defendants claim prejudice resulted

when the prosecutor questioned one of American's physician's assistants about dispensing drugs. Again, when defendants objected to the testimony, the trial court sustained the objection and gave curative instructions. We find no merit in defendants' claims that they were denied a fair trial. *People v Thorngate,* 10 Mich App 317, 323; 159 NW2d 373 (1968).

## VII

Finally, defendant Fuentes argues that the trial court's imposition of $40,000 in restitution as a condition of probation was unconstitutional.

Before addressing this issue, we must comment on the trial court's sentencing procedure. After informing defendants that they would be required to pay restitution, the judge extracted a promise from each defendant that defendants would not appeal any error allegedly committed in sentencing. Const 1963, art 1, § 20 gives an accused the right to appeal his conviction and sentence. While constitutional rights may be waived, Michigan courts have refused to allow agreements which waive a defendant's constitutional right to appeal. See *People v Harrison,* 386 Mich 269, 275; 191 NW2d 371 (1971), *People v Butler,* 43 Mich App 270, 281; 204 NW2d 325 (1972). Such agreements would effectively insulate the decisions of trial courts from appellate review. A trial court may not require that a defendant waive his right to appeal sentencing errors.

Turning to the merits of defendant Fuentes' claim, he argues that the record does not support a finding that he may be liable for $40,000 in restitution. A criminal defendant, who has been placed

on probation, may be required to pay restitution. MCL 769.3; MSA 28.1075, MCL 771.3; MSA 28.1133. Restitution has been upheld as a condition of probation in welfare fraud cases. *People v Neil,* 99 Mich App 677, 679; 299 NW2d 23 (1980). Therefore, the trial court could impose restitution upon defendant Fuentes as part of his sentence for violating the Medicaid False Claim Act, MCL 400.601 *et seq.;* MSA 16.614(1) *et seq.*

Restitution is designed to compensate the injured victim, and, as a condition of probation, the amount and manner of payment is a matter for the judgment of the sentencing judge. *Neil, supra,* 680. However, a prerequisite to adequate appellate review of restitution mandates a disclosure of the purpose of the payment and the manner in which the amount of restitution has been determined. *People v Heil,* 79 Mich App 739, 748; 262 NW2d 895 (1977). Furthermore, there must be persuasive support in the record for the sentencing judge's conclusion that the losses for which restitution is ordered were caused by the criminal conduct of the defendant. *People v Pettit,* 88 Mich App 203, 207; 276 NW2d 878 (1979), *lv den* 406 Mich 987 (1979).

In this case, the sentencing judge did not state on the record how he determined the amount of restitution owed. However, an examination of the record, including that of the preliminary examination, convinces us that defendant Fuentes has not been harmed by the sentencing court's determination. During the preliminary examination, evidence was introduced that American's clinics claimed 5,135 direct laryngoscopies. Defendant Fuentes' provider number appeared upon 973 of the claims. American was reimbursed $67 for each

direct laryngoscopy and a total of $63,251 for those claimed by Fuentes. The sentencing court required Fuentes to pay $40,000 in restitution. While the sentencing court should have been more explicit in its findings, any error which occurred inured to defendant Fuentes' benefit.

## VIII

Because of our disposition on defendants' appeals, we do not address the prosecution's cross-appeal. We affirm defendants' convictions.

Affirmed.