196 N.J. Super. 516 (1984)
483 A.2d 436
STATE OF NEW JERSEY, PLAINTIFF,
v.
JEANNE ANNE WRIGHT, DEFENDANT.
Superior Court of New Jersey, Law Division Camden County.
Decided April 19, 1984.
*520 Dennis G. Wixted for plaintiff (John B. Mariano, Camden County Prosecutor, attorney).
Anne T. Manning for defendant (Joseph H. Rodriguez, Public Defender, attorney).
ROSSETTI, J.S.C.
This case raises numerous novel questions concerning New Jersey's death penalty statute, N.J.S.A. 2C:11-3(c).
The prosecutor, at the time of arraignment, filed and noticed the defendant of an aggravating factor, thereby designating the matter as a capital case. At the time of the pretrial, and after plea negotiations with defendant's counsel, the State made application to the court to withdraw the aggravating factor previously filed. A plea agreement had been entered into whereby in return for the defendant's plea of guilty to four counts of murder, the State agreed to withdraw the aggravating factor, recommend dismissal of two other counts of the same indictment and recommend four concurrent life sentences with 30 years of minimum parole ineligibility.
This plea agreement raises the following questions:
I. May the prosecuting attorney withdraw an aggravating factor which is supported by the evidence in order to remove the death penalty as a possible sentence?
II. Is a de facto procedure whereby a defendant may plead guilty to avoid the death penalty constitutionally permissible?
III. Does the court in a capital case have jurisdiction to entertain a plea agreement and consider and weigh the aggravating and mitigating factors?
A historical review and analysis of the U.S. Supreme Court cases which struck down previous death penalty acts as unconstitutional is required in order to determine the legislative intent in connection with the present New Jersey death penalty statute, N.J.S.A. 2C:11-3(c).
The U.S. Supreme Court declared the Federal Kidnapping Statute unconstitutional in U.S. v. Jackson, 390 U.S. 570, 88 *521 S.Ct. 1209, 20 L.Ed.2d 138 (1968) because it "needlessly penalize[d] the assertion of a constitutional right" as a result of the "chilling effect" upon a defendant's right to trial by jury where that defendant must waive his right in order to avert the death penalty. Id. at 583, 88 S.Ct. at 1217. New Jersey's prior death penalty statute was found unconstitutional based upon the reasoning of Jackson in Funicello v. N.J., 403 U.S. 948, 91 S.Ct. 2278, 29 L.Ed.2d 859 (1971); State v. Funicello, 60 N.J. 60 (1972).
The Supreme Court in Jackson stated:
The Congress can of course mitigate the severity of capital punishment. The goal of limiting the death penalty to cases in which a jury recommends it is an entirely legitimate one. But that goal can be achieved without penalizing those defendants who plead not guilty and demand jury trial. In some States, for example, the choice between life imprisonment and capital punishment is left to a jury in every case  regardless of how the defendant's guilt has been determined. [390 U.S. at 582] [88 S.Ct. at 1217]
Subsequently, the Court constitutionally condemned death-penalty statutes which were subject to arbitrary and capricious sentencing procedures and which lacked appropriate legislative guidelines for the sentencing adjudication. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); and Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976).
In Furman the Supreme Court said:
The high service rendered by the "cruel and unusual" punishment clause of the Eighth Amendment is to require legislatures to write penal laws that are evenhanded, nonselective, and nonarbitrary, and to require judges to see to it that general laws are not applied sparsely, selectively, and spottily to unpopular groups.
....
Thus, these discretionary statutes are unconstitutional in their operation. They are pregnant with discrimination and discrimination is an ingredient not compatible with the idea of equal protection of the laws that is implicit in the ban on "cruel and unusual" punishments.

*522 Any law which is nondiscriminatory on its face may be applied in such a way as to violate the Equal Protection Clause of the Fourteenth Amendment. [408 U.S. at 256-57 [92 S.Ct. at 2735]; footnote omitted]
More recently, the Ninth Circuit Court of Appeals held that the guidelines can not be supplied by the court but must be legislatively articulated in the statute. U.S. v. Harper, 729 F.2d 1216 (9 Cir.1984).
A study of these decisions indicates quite clearly that any sentencing procedure which lacks legislative standards in connection with the sentence adjudication or which allows arbitrary or capricious sentences may be rendered unconstitutional.

I
New Jersey's death-penalty statute, N.J.S.A. 2C:11-3(c), has removed from the prosecutor any discretion in the sentencing proceeding which includes the removal of an aggravating factor which is supported by the evidence in the case.
The New Jersey Legislature must have been aware of the historical-constitutional background when it drafted New Jersey's current death-penalty act. The New Jersey act sets forth specific guidelines designated as aggravating and mitigating circumstances for the adjudication of sentence and specifically removes from the prosecutor any discretion in connection with the sentencing phase of a capital case. This is evidenced by the language of N.J.S.A. 2C:11-3(d) which states: "The sentencing proceeding set forth in subsection c. of this section shall not be waived by the prosecuting attorney." This language is unambiguous and removes from the prosecuting attorney any discretion in connection with the sentence of a defendant in a capital case. It would appear, therefore, that the Legislature has attempted to draft an act which would eliminate any potential constitutional defect by removing prosecutorial discretion and by supplying appropriate guidelines for sentence adjudication in a capital case.
*523 Under our statute, the duty of the State in connection with the prosecution of a murder indictment is to investigate the facts and to report to the court and divulge to the defendant facts which would indicate the presence of aggravating factors. The State has argued that the prosecuting attorney has the discretion to file an aggravating factor thereby designating the indictment as a capital case. The act requires that:
Prior to the commencement of the sentencing proceeding, or at such time as he has knowledge of the existence of an aggravating factor, the prosecuting attorney shall give notice to the defendant of the aggravating factors which he intends to prove in the proceeding. [N.J.S.A. 2C:11-3(c)(2); emphasis supplied.] In addition to any discovery provided pursuant to R. 3:13-3, the prosecuting attorney shall provide the defendant as required by N.J.S.A. 2C:11-3(c)(2) with an itemization setting forth the aggravating factors he intends to prove at the sentencing hearing together with all discovery bearing on these factors. [R. 3:13-4; emphasis supplied.]
If evidence is present in the case which would justify a determination of an aggravating factor, the prosecuting attorney's duty is to reveal those facts to defendant and the court. A prosecuting attorney who fails to indicate the existence of evidence of an aggravating factor is not exercising discretion, but rather is derelict in his duty as an officer of the court and as a public servant.
To permit the prosecutor to withdraw a previously indicated aggravating factor violates the clear legislative intent to remove from the prosecutor any discretion in connection with the death aspect of a murder case and gives an interpretation to the statute which might render it unconstitutional.
Regardless of the constitutional impact, the Legislature has determined to exclude the prosecuting attorney from the sentencing process. A prosecuting attorney who may determine which defendants will be subjected to the death penalty and which will not is clearly waiving the sentencing proceeding set forth in N.J.S.A. 2C:11-3(c) in violation of N.J.S.A. 2C:11-3(d).
*524 This defendant, apparently because of the belief that the father of three of her children might attempt to gain custody of them, over a period of several hours and after much thought, placed each of her four children into the river until they were drowned. She stated that the tide pulled Emilio out and that he was screaming for help. She said she could hear Jonathan screaming, "mommy help me." She stated Jana resisted initially when she laid her in the water, but that Jana hit one leg and went down immediately; that it seemed the weight of her coat was pulling her down. She later laid the baby in the water. He rolled around and came back closer to her. She grabbed the baby's leg and picked him up, but he was not moving. She believed he was dead so she put him back into the water. She sat around for awhile thinking about what she had done and then went back to a friend's home. She initially reported the children were kidnapped by their father. Two days later, she signed a complaint against the father of the children for kidnapping and told the police that he and another male had accosted her and taken the children. Two weeks later, after the body of Jonathan was discovered, the defendant admitted having killed each of her four children. This court is convinced that these facts demonstrate a murder which is outrageously or wantonly vile, horrible or inhuman and which involved torture, depravity of mind and an aggravated battery to the victims thereby constituting an aggravating factor under the law. N.J.S.A. 2C:11-3(c)(4)(c).
Accordingly, this court concludes that the facts supporting the aggravating factor are present in this case and that the prosecuting attorney has no discretion to withdraw it. Therefore, the court must deny the State's application to withdraw the aggravating factor.

II
A defendant in a capital case may conditionally waive the right to jury trial and jury adjudication of sentence, thereby conferring on the court jurisdiction for the sentencing process.
*525 A distinguishing feature of the New Jersey death-penalty statute is the departure from common law tradition whereby the penalty phase of the criminal process has been taken from the court and placed in the hands of the jury. The issue the act presents, in the context of this case, is whether having an aggravating factor involved denies the court jurisdiction to determine the penalty aspect of a capital case. This court has concluded that it does not.
Under N.J.S.A. 2C:11-3(c)(1) the Legislature has indicated:
Where the defendant has entered a plea of guilty or has been tried without a jury, the proceeding shall be conducted by the judge who accepted the defendant's plea or who determined the defendant's guilt and before a jury impaneled for the purpose of the proceeding. On motion of the defendant and with the consent of the prosecuting attorney the court may conduct a proceeding without a jury. [Emphasis supplied]
The Legislature anticipated and allowed for a defendant, with the consent of the prosecutor, to waive a trial by jury as to both the penalty aspects of the case and the guilt adjudication phase.
All defendants as part of the entry of a guilty plea clearly and unequivocally waive their right to trial by jury. See State v. Raymond, 113 N.J. Super. 222 (App.Div. 1971). Defendant in this case did so after advice of counsel and after questioning by the court. The prosecuting attorney and defendant, by submission of a plea agreement for approval by the court, have requested that the court, without a jury, conduct the penalty phase of the case in order to determine the appropriateness of the plea agreement. It appears that the procedure satisfies the act which permits the court, without a jury, to conduct a penalty proceeding "[o]n motion of the defendant and with consent of the prosecuting attorney...." N.J.S.A. 2C:11-3(c)(1). The waiver by defendant of the jury aspect of the case and the prosecuting attorney's consent, which is inherent in the plea agreement, has conferred upon the court the jurisdiction to conduct the penalty phase non-jury.
If a defendant has the right to waive a jury determination in the penalty phase of a capital case and request a *526 non-jury penalty adjudication, then there would appear no reason why defendant could not make such a waiver conditional upon the court's acceptance of the plea agreement. As in all plea agreements, if the court rejects the agreement, the defendant has the opportunity to withdraw the guilty plea and proceed to trial.
The court, after making the evaluations and the considerations required in the penalty process under N.J.S.A. 2C:11-3(c)(3), may either conclude that the death penalty is required under the act and reject the plea agreement presented, or may conclude that a non-death result is entirely appropriate, approve the plea agreement and sentence the defendant accordingly. This procedure not only fulfills the mandate of the Legislature but enables defendants to plead guilty and avoid the risk of death.
The present death penalty statute would satisfy the concern of former Chief Justice Weintraub who did not believe that every defendant should be compelled to run the risk of death. In his concurring opinion, wherein he attempted to reconcile the holdings of the U.S. Supreme Court in Jackson and Funicello the Chief Justice wrote:
Although I was not familiar with the statutory schemes in all the other States which had capital punishment, it was inconceivable that there was not some equivalent method in each whereby a defendant could avoid the death penalty, whether by a plea of guilty to murder in the first degree or by a plea to a lesser included charge. Whatever the technique, the issue would be the same, unless mere form or words could be triumphant. And it seemed to me that there was also implicated the widespread practice known by the unpleasant label `plea bargaining'; for whatever may be the offense charged in the indictment, the same ethics are involved in the acceptance of a plea of guilty to the charge or to some lesser one upon an agreement for more lenient treatment. To say the death penalty is singularly different and to insist that every defendant shall run the risk of death, is to me regressive, for it holds the inevitable promise of a higher incidence of executions. [State v. Funicello, 60 N.J. 60, 75 (1972)].
The novelty of New Jersey's death-penalty statute is that the only defendants that will be permitted to plead guilty are those who qualify under the sentencing guidelines in the act. This interpretation removes any arbitrary or capricious *527 standards and satisfies the Furman dictate. The act does not "needlessly penalize the assertion of a constitutional right" because it has removed any "chilling effect" on defendant's right to trial by jury when the only defendants who will be permitted to plead guilty are those who are entitled to a non-death result after applying the legislative guidelines which satisfies the concern of the U.S. Supreme Court in Jackson.

III
A de facto procedure whereby a defendant may plead guilty to avert the possibility of a death penalty is constitutionally permissible where the act employs standards for the sentencing adjudication and where a particular defendant's guilty plea can only be accepted if the legislative standards have been satisfied.
The U.S. Supreme Court has sanctioned the use of guilty pleas in all criminal cases, including those cases in which the death penalty was avoided by pleading guilty. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
In Brady defendant was able to avoid the possibility of the death penalty by pleading guilty. The Court said:
But we cannot hold that it is unconstitutional for the State to extend a benefit to a defendant who in turn extends a substantial benefit to the State and who demonstrates by his plea that he is ready and willing to admit his crime and to enter the correctional system in a frame of mind that affords hope for success in rehabilitation over a shorter period of time than might otherwise be necessary. [397 U.S. at 753] [90 S.Ct. at 1471]
The U.S. Supreme Court went on to indicate that once a determination is made that a plea of guilty was voluntarily entered, with the full understanding of its consequences, it is not invalid merely because it was entered to avoid the possibility of the death penalty. Ibid.
*528 Subsequently, in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the Court stated:
Nothing in any of our cases suggests that the decision to afford an individual defendant mercy violates the Constitution. Furman held only that, in order to minimize the risk that the death penalty would be imposed on a capriciously selected group of offenders, the decision to impose it had to be guided by standards so that the sentencing authority would focus on the particularized circumstances of the crime and the defendant. [at 199]
The Court in Gregg concluded that there must be standards to guide the court or jury that would decide whether to impose the death penalty. Once those standards are in place and can pass constitutional muster, it is permissible to allow defendants to avoid that potential by pleading guilty.
It would appear that plea negotiations and agreements are constitutionally sound and judicially desirable in the State of New Jersey. State v. Thomas, 61 N.J. 314, 321 (1972); R. 3:9-3. The wisdom and social desirability of plea negotiations and plea agreements are now firmly established and accepted, especially in this age of ever-growing criminal dockets and backlogs.
The New Jersey Supreme Court apparently anticipated plea negotiations in capital cases and provided "When the defendant is charged with a crime punishable by death, no factual basis shall be required from the defendant before entry of a plea of guilty to a capital offense or to a lesser included offense. ..." R. 3:9-2; emphasis supplied.
The defendant, in this case, has voluntarily entered pleas of guilty to the charges in question. It is obvious that among the numerous reasons the defendant had for pleading guilty, was the avoidance of the possibility of the death penalty. This court is satisfied that a plea agreement which provides for the avoidance of the death penalty as a condition of a guilty plea, voluntarily and freely entered into, is constitutionally permissible and desirable, especially where there is a legislative standard which the defendant must satisfy in order for the guilty plea to be accepted.